1832.

In the matter of Hemiup.

---

## In the matter of Hemiup.

Where, upon an application to confirm a sale of real estate, made under an irregular order of a surrogate, it appeared that at the time the order for sale was made, there was personal estate in the hands of the administratrix more than sufficient to pay all the debts of the intestate, and there was no evidence that any part of the personal estate, or of the proceeds of the sale of the real estate, ever came to the hands of the heirs at law : *Held*, that the assignee of the purchaser was not entitled to an order confirming the sale, although the latter purchased the estate at the sale in good faith, without notice of the fraud committed by the admistratrix.

The application to the chancellor, under the statute, to confirm a sale under an irregular and illegal order of a surrogate, proceeds upon the ground that the sale was unauthorized, and that the legal title remains in the heirs at law ; and where the equities of the parties are equal, they will be left to their legal rights.

Under the provisions of the revised statutes, the court of chancery may award costs against a party to any proceeding in equity, whether such proceeding was originally instituted in such court, or brought there by appeal.

Where it is referred to a master to examine and report as to particular facts, or as to any other matter, it is his duty to draw the conclusions from the evidence before him, and to report such conclusions only ; and it is irregular and improper to set forth the evidence, in his report, without the special direction of the court.

Where the master incorporates the testimony into his report without the special direction of the court, although it is done upon the solicitation of counsel, he will not be allowed for it on the taxation of his costs.

If the conclusion which the master is required to draw is a question of law, and not a mere legal presumption of a fact, he is permitted, in the exercise of a sound discretion and without an order for that purpose, to make a special report submitting the legal question to the decision of the court.

Upon a special report, the master should not report the evidence; but he must draw all the conclusions of fact, as in a special verdict, leaving the question of law alone for the decision of the court.

The master is only permitted to make a special report where by the order of reference some equity is reserved, so that the case must be brought before the court for further directions, upon the coming in of the report; but where all the consequential directions are contained in the decree or order of reference, the master must decide the questions of law as well as of fact which arise on the reference; so that the decree may be executed upon the confirmation of the master's report in the register's office, or otherwise.

May 15.

THIS was an application, under the provisions of the revised statutes, to rectify certain irregularities in the sale of real estate. (*Vide 2 Paige's R. 317, S. C.*) Upon hearing the parties, the court referred it to a master to enquire and report whether any, and what debts were due from the decedent, and whether he left sufficient property to pay those debts; and if he did not leave sufficient property for that purpose, the master was then directed to report what amount of personal property he did leave which came to the hands of the administratrix; whether he left any real estate other than the lot in question on this application; whether the purchase money on the sale was actually paid to the administratrix, and at what time; whether the purchase was made for the sole benefit of the person to whom the conveyance was made, and under whom the petitioner derived his title; and what disposition had been made of the purchase money, &c. The master, instead of reporting specifically upon the several points submitted to his decision, reported a mass of facts and documentary evidence, leaving the court to draw its own conclusions from that evidence as to the points which he had been required to examine and decide. Upon the coming in of that report, both parties were heard by their counsel upon the merits of the application.

*J. Rhoades,* for the petitioner.

*S. M. Hopkins,* for the heirs of the decedent.

THE CHANCELLOR. The master has entirely mistaken his duty in reporting the evidence to the court, when it was referred to him to draw certain conclusions of fact. When the

court refers it to a master to examine and report as to the existence or non-existence of a fact, or as to any other matter, it is his duty to draw the conclusion from the evidence produced before him, and to report that conclusion only. And it is irregular and improper for him to set forth the evidence in his report, without the special direction of the court. If either party is dissatisfied with the conclusion at which the master has arrived, he may except to the report; and may then obtain from the master certified copies of the depositions, or other evidence on which the decision of the master was founded, to be used on the argument of the exception. If the master incorporates the testimony into his report without the special direction of the court, he cannot be allowed for it on the taxation of costs, although it was done upon the solicitation of the counsel. Thus, in *Dixon* v. *Dixon*, (3 *Brown's Ch. Cas.* 510, *n,*) where it was referred to a master to inquire whether a legatee was living or dead, and if dead, when and where he died, and who were his next of kin; and the master reported the evidence, from which it appeared that the legatee went to the East Indies, and had not been heard of for twenty-eight years, Lord Alvanley directed the master to revise his report, and to draw the conclusion whether the legatee was dead, and if so, whether he died in the lifetime of the testator. A similar practice was pursued by Lord Eldon in *Lee* v. *Willeck*, (6 *Vesey's Rep.* 605.) Where the conclusion which the master is required to draw is strictly a question of law, and not a mere legal presumption of fact, the master may sometimes be permitted, in the exercise of a sound discretion, and without any previous order for that purpose, to make a special report submitting the legal question to the decision of the chancellor, where the case must necessarily come before the court for further directions upon the coming in of the master's report. Even in such cases, however, the master is not at liberty to report the evidence, but he must himself draw all the conclusions of fact, as in a special verdict, leaving the question of law alone for the decision of the court. (*Dutchess of Marlborough* v. *Wheat*, 1 *West's R.* 9. 1 *Newl. Pr.* 3 *Lond. ed.* 555.) Where if all the directions consequent upon the master's report are contained in the previous decree or order

of reference, it will be his duty to decide all questions of law as well as of fact which may arise upon the reference ; so that the decree may be executed upon the confirmation of the report in the register's office, or by the court, if exceptions are taken thereto.

In this case the master was directed, among other things, to report whether the decedent F. Backenstose left sufficient personal property to pay his debts. But instead of reporting as to that fact, the master has stated the amount of the debts, and annexed copies of the inventories filed by the administratrix, as the evidence of the personal estate of the intestate which came to her hands to be administered. In the absence of all other proof, the inventory is undoubtedly presumptive evidence of the amount of the personal estate. The master, however, should have drawn the conclusion of fact from the testimony ; which testimony is improperly set out in the report, or attached to the same in the form of schedules. Correct practice would require that this report should be referred back to the master, with directions to him to revise it so as to conform to the directions of the order of reference. But as there are sufficient facts before the court to enable it to dispose of this cause without subjecting the parties to further expense, I shall endeavor to settle the case upon its merits, without further delay. In justice to the master, it may be proper to state, that he has merely mistaken his duty ; for it appears by the report that most, if not all of the impertinent matter set out in the report and the schedules, was inserted at the request of the solicitors of one or both of the parties. But the order of Lord Coventry expressly prohibited masters from making special certificates of matters in their reports upon the importunities of counsel, or their clients, unless required by the court to do so, or their own judgment, in respect of difficulty, led them to it. (*Prac. Reg.* 377.)

From the evidence in this case there is no doubt that the person under whom the petitioner claims title purchased the property, at the sale by the administratrix, in good faith ; and that the administratrix has actually received all the purchase money on such sale. But it also appears that the intestate owed less than $700, and that the personal estate which came

1832.

In the matter
of Hemiup.

to the hands of the administratrix was more than sufficient to pay those debts, and the expenses of the administration. And no evidence is produced on the part of the petitioner that any portion of the proceeds of the real or personal estate ever came to the hands of the heirs at law, or was applied for their benefit. Under these circumstances, the counsel for the petitioner supposes it a matter of course to have the sale confirmed; such, however, could not have been the intention of the legislature in passing the law under which this proceeding has been instituted. The application proceeds upon the ground that the sale was unauthorized, and that the legal estate still remains in the heirs at law. If, therefore, the equities between the parties are equal they must be left to their legal rights. The sixty-first section of the statute directs the chancellor to make such order for confirming the sale and conveyance as he shall deem equitable, provided he is satisfied the sale was made fairly, and in good faith. (2 R. S. 111, § 63.) But it may be considered at least doubtful whether the sale was made fairly and in good faith, if the administratrix obtained an order to sell the real estate, when there was sufficient personal property in her hands to pay all the debts. If she has committed a fraud by which the whole of the purchase money has been lost, it has not been lost by the fault of the heirs, but through the carelessness of the purchaser, who has paid his money without first ascertaining that she had a legal power to sell. It cannot be said in this case that the heirs have sustained no injury from the neglect to have a discreet person joined with the administratrix in the sale. Under the act of 1813, the monies were to be brought into the office of the surrogate for distribution, where the whole real estate was sold; and the proceeds of the sale were only to go into the hands of the personal representatives, as assets, upon the sale of a part. As the whole of the real estate was sold in this case, if a discreet person had been joined with the administratrix in the sale, he would have been bound to see that the purchase money was paid over to the surrogate; and he would have been personally liable for any neglect of his duty in this respect. The legislature only intended to authorize the chancellor to make a decree, upon a summary proceeding of this kind, to correct a mere defect of

form, where the spirit of the statute had been complied with. They could not have intended to authorize the taking of the property of the heirs at law and giving it to the purchaser, where the equities of the heirs were coupled with the legal estate and were prior in point of time, if not superior in character, to his. As the order of the surrogate, in the form in which it was made, was wholly unauthorized, it is not even prima facie evidence of the facts stated therein. It was for this reason, among others, that the master was directed to ascertain whether in point of fact the situation of the personal property and of the debts was such as to justify the surrogate in making an order to sell the real estate. An opportunity was also afforded to the petitioner, at the same time, to show that the purchase money had been received by the heirs at law, or had been appropriated for their benefit by the administratrix, if such was the fact. As the petitioner has not succeeded in showing any equity as against the heirs in either of these respects, I cannot, consistently with the equitable principles which govern this court, divest the heirs of the legal title to this property for which they have received no equivalent.

If the heirs have any remedy against the administratrix, or her sureties, to recover the amount which has been received by her on the sale of this property, this court, upon a proper application, may perhaps authorize the petitioner to enforce that remedy in the name of the heirs for his own benefit; upon his furnishing them with a sufficient indemnity against the costs of such a proceeding. I am not authorized to settle that question, however, upon this summary application.

Upon the facts disclosed in this case, it is at least doubtful whether the whole of the proceedings before the surrogate are not void, for want of jurisdiction, even if this formal defect in the order of sale could be cured. If so, the sureties in the administration bond may not be liable for the monies received on the sale. The petition must therefore be dismissed; but without prejudice to the right of the petitioner to proceed by bill against the heirs, and the administratrix and her sureties, or any, or either of them, as he may be advised. And the injunction heretofore granted in this matter must be dissolved.

In the matter of *The Masters of the Bedford Charity*, (2 *Swanston's Rep.* 532,) Lord Eldon decided he had not power to give costs upon a summary proceeding, where the law was silent as to costs. But by the revised statutes the power of this court is general, in relation to costs. And in all cases, where no special provision is made by law, the costs of all suits and proceedings in equity, whether originally commenced in this court, or brought here by appeal, are to be paid by such party as the court shall direct. (2 *R. S.* 613, § 2.) I have no doubt that this is a proceeding in equity within the meaning of the statute, upon which costs may be awarded against the petitioner. But as it is a case of peculiar hardship on his part, and the petition has been presented and prosecuted in good faith, I do not consider it my duty to charge him with the costs of the adverse parties.