Dean *v.* Emerson.

---

## JOHN DEAN *vs.* SAMUEL P. EMERSON.

The duty imposed on a person appointed, by order of court, in a suit in equity, "commissioner to hear the parties, and to report facts, and such of the evidence as either party may desire," is that of a master in chancery; and his conclusions on questions of fact have every reasonable presumption in their favor, and are not to be set aside without clear proof of mistake or error.

The defendant, having covenanted with the plaintiff on the dissolution of a firm for the manufacture of daguerreotype materials, of which they had been members, "not, directly or indirectly, to enter into, or carry on, or in any way be interested in, or furnish to any person or persons information in regard to," that business within certain limits, nevertheless formed with a third person a new partnership within said limits for that business, had the whole financial charge of the new partnership, travelled about the country, visiting the customers of the old firm, and introducing the goods of the new partnership, and received a commission on all sales. *Held*, that these facts warranted a finding that the defendant was liable for all the injury occasioned to the plaintiff by the establishment of the new partnership.

A. and B. entered into an indenture in which B. covenanted not to be interested in a certain business within a certain county, and also covenanted not to be interested, for five years in the same business within the United States. *Held*, that B. was liable for a breach of the first covenant, although the second covenant might be void as in restraint of trade.

Dean *v.* Emerson.

GRAY, J.   This bill in equity is brought to enforce the defendant's covenants in an indenture, executed by himself and the plaintiff on the 27th of October, 1865, upon the dissolution of a partnership previously existing between them under the name of Dean & Emerson, and by which the defendant, in consideration of ten thousand dollars paid to him by the plaintiff, sold and assigned to the plaintiff " all his right, title and interest in and unto the property, both real and personal, belonging to the copartnership aforesaid, including that branch of the business in which Horace M. Heddon is a third partner," excepting the accounts due and moneys on hand; it was agreed that the plaintiff should retain the books and settle the affairs of the partnership, " and that, from the moneys on hand and to be collected from the accounts due to said firm or firms, he pay all debts and liabilities outstanding against them, and within a reasonable time pay over to the said Emerson one half of the balance belonging to the said Dean & Emerson, and one third of the balance belonging to Dean, Emerson and Heddon;" and the defendant, " for the consideration aforesaid, further covenants and agrees to and with the said John Dean, that he will not, directly or indirectly, enter into, or carry on, or in any way be interested in, or furnish to any person or persons information in regard to, the business of manufacturing daguerreotype and ambrotype materials, within the limits of the county of Worcester; and for the same consideration he further covenants and agrees to and with the said John Dean, that he will not, directly or indirectly, enter into or carry on, or in any way be interested in, or furnish to any person or persons information in regard to, the business of manufacturing daguerreotype or ambrotype materials, within the limits of the United States, for the term of five years from this date."

The bill prays for an injunction, an account, compensation, and further relief.   After the filing of the answer, it was ordered by the court " that Thomas L. Nelson, Esquire, be and he is hereby appointed commissioner in the above named action, to hear the parties, and to report facts, and such of the evidence as either party may desire, and make report thereof to the court as

soon as may be; and if either party shall neglect to appear before said commissioner, after having been duly notified of the time and place of the meeting, the said commissioner shall have power to proceed *ex parte."*

Although the general word "commissioner" is used in this order, the duty imposed by it upon Mr. Nelson "to report facts, and such of the evidence as either party may desire," shows that he is to act as a master in chancery, whose duty it is to report his own conclusions of fact upon all matters referred to him, and also, if directed by the court and requested by either party, so much of the evidence offered before him as may be necessary to enable the court to test the correctness of his findings in any respect, upon specific exceptions taken by either party to his report. *Lee* v. *Willock,* 6 Ves. 605. *Johnston* v. *Reardon,* 1 Molloy, 54. *In re Hemiup,* 3 Paige, 305. *Sparhawk* v. *Wills,* 5 Gray, 423. In *Harding* v. *Handy,* 11 Wheat. 103, 126, Chief Justice Marshall applied the word "commissioner" to a master, and defined his duties as follows: "It may be observed, generally, that it is not the province of a court to investigate items of an account. The report of the master is received as true, when no exception is taken; and the exceptions are to be regarded so far only as they are supported by the special statements of the master, or by evidence, which ought to be brought before the court by a reference to the particular testimony on which the exceptor relies. Were it otherwise, were the court to look into the immense mass of testimony laid before the commissioner, the reference to him would be of little avail. Such testimony, indeed, need not be reported further than it is relied on to support, explain or oppose a particular exception."

It is well settled, and is important to be borne in mind in passing upon the exceptions to the master's report, that the report of a master upon questions of fact referred to him, depending upon a conflict of testimony, has every reasonable presumption in its favor, and is entitled to as much weight as the verdict of a jury; and his conclusions are not to be set aside or modified without clear proof of error or mistake on his part. *Adams* v. *Brown,* 7 Cush. 220. *Mason* v. *Crosby,* 3 Woodb. & Min.

**258.** *Izard* v. *Bodine*, 1 Stockt. 309. *Sinnickson* v. *Bruere*, Ib. 659.

The undisputed facts of this case, as reported by the master, are as follows : In 1858 the plaintiff and the defendant formed a partnership, and engaged in the manufacture of metal frames for daguerreotypes and similar pictures in the city of Worcester. In April 1863, the partnership formed a connection in business with Horace M. Heddon, a person skilled in the manufacture of ferroplates, by the terms of which Dean & Emerson were to contribute the necessary capital ; Heddon was to contribute his time, talents and experience in making these plates, and to teach his associates the art and mystery of manufacturing them; and Dean & Emerson were to have two thirds, and Heddon one third, of the profits of the business of making ferroplates. This business was conducted under the name of Dean & Emerson, but was kept separate from their other business, in which Heddon had no interest. From that time until the dissolution, an extensive and profitable business in the manufacture of ferroplates was carried on by the partnership, and finally became its principal business; and its customers were chiefly wholesale dealers in materials and implements used in making photographs, ferrotypes and other similar pictures. Daguerreotypes are taken upon copper plates coated with silver; ambrotypes upon glass plates; and ferroplates are thin iron plates coated with varnish, upon which pictures are taken by the same process as ambrotypes, and are called, according to their size, ferrotypes and tintypes. The making of daguerreotypes and ambrotypes had substantially ceased before October 1865, the date of the indenture in suit. From and after that date, the plaintiff continued to carry on in Worcester the business of making frames in connection with one Morgan, and the ferroplate business in connection with Morgan and Heddon, until January 1, 1868, when Heddon also retired, and transferred his interest to the plaintiff, who has ever since continued to carry on in Worcester both branches of the business, with Morgan as his partner. In the spring of 1868, the Phœnix Plate Company was established, and has ever since been engaged in the business of manufactur-

ing ferroplates in the city of Worcester, of the same kind and quality as those formerly made by Dean & Emerson, and since made by Dean; Heddon being the ostensible owner, and the defendant ostensibly the financial and selling agent.

The first exception taken by the defendant is to the finding of the master that the term "daguerreotype and ambrotype materials," as used at the date of the indenture by manufacturers and by that class of customers to whom Dean & Emerson were accustomed to sell their goods, included ferroplates. The witnesses upon this point are numerous, and their statements and opinions are conflicting. But upon a careful examination of the whole testimony we cannot say that the finding of the master is not sustained.

The next matter of exception is, that the master has found that the defendant was a joint owner and partner in the Phœnix Plate Company. But the evidence reported, especially of the defendant's own declarations, warranted this finding also.

The next exception is, that the master has assessed the defendant with the entire damage found by him to have been occasioned to the plaintiff, instead of assessing only such portion of the damage as was caused by the acts of the defendant. But the master finds as facts, (and we see no sufficient ground for modifying his findings in these respects,) that the defendant was not only interested as a partner and joint owner in the business, and shared with Heddon the general care and charge of the same, and, with Heddon's authority, had the whole charge of the financial part of the business, drawing checks, signing notes and making purchases, but that he, being acquainted with the customers of Dean & Emerson, and familiar with the manner of conducting their business, the cost of manufacture and the prices at which their goods had been sold, travelled about the country, visiting the customers of Dean & Emerson, and of Dean, and introducing into the market the goods of the Phœnix Plate Company, and himself received a commission on all sales made in behalf of that company. These facts warranted the inference that all the acts done to the injury of the plaintiff were acts in which the defendant participated

in violation of his covenants that he would not, "directly or indirectly, enter into or carry on, or in any way be interested in, or furnish to any person or persons any information in regard to, the business of manufacturing daguerreotype and ambrotype materials."

The next exception is to the finding of the master of the amount of sales by the Phœnix Plate Company as a basis for his estimate of damages. But this finding does not appear to us to have been against the weight of evidence.

The only other subject of exception is, that the master in his assessment has not discriminated between the damages for breaches of the two covenants of the defendant, and that the second covenant is void because in unlawful restraint of trade. But it appears that all the injury to the plaintiff's business, for which the master has assessed damages, arose from the business established in the city of Worcester, and the selling of articles manufactured there in direct violation of the first covenant. And the two covenants are clearly distinct and divisible. We need not therefore consider the validity of the second covenant. *Mallan* v. *May*, 11 M. & W. 653. *Green* v. *Price*, 13 M. & W. 695, and 16 M. & W. 346.

The result is, that all the defendant's exceptions to the master's report are overruled, and, as the plaintiff's exceptions are not insisted on, there must be a

*Decree for the plaintiff, according to the master's report.*

*G. F. Hoar & G. F. Verry*, for the plaintiff

*P. E. Aldrich*, for the defendant.