SAMUEL PELTZ, *et al.*, Respondents, *vs.* AUGUSTUS EICHELE, Appellant.

62 171
117 427
62 171
56a 72
62 171
151 448
62 171
82a. 664
82a 667
62 171
83a 14
83a 28

1. *Practice, Supreme Court—Bill of exceptions—Recital as to evidence—Rule VII.*—It will be presumed that a bill of exceptions contains all the evidence without a recital therein to that effect. (See rules Supreme Court, rule VII, 48 Mo.)

2 *Practice, Supreme Court—Error apparent on face of record, consideration. of by—Withdrawal of demurrer—Failure to move in arrest.*—The objection that the facts stated in a petition constitute no cause of action, will be entertained in the Supreme Court although there urged for the first time. And the withdrawal of a demurrer filed on the ground, and failure to move in arrest therefor, will not preclude such objection.

For material error, apparent on the face of the record, the judgment of an inferior court will be reversed, although no exception was taken therein.

3. *Contract in restraint of trade—Illegality of.*—A contract not to engage in a particular trade for a specified time, "in the city of St. Louis, or at any other place " is divisible, and as to the restriction imposed in St. Louis, is not void as in restraint of trade.

4. *Sale of business—Claim of fraudulent representations.*—A contract, for the sale of certain property and business, cannot be defeated on the ground of fraudulent representations by the vendee that a certain person shall not engage in the business with himself, where the bargain is consummated after such intention has been learned, and the bargain is unconditional, and the purchase price is paid.

5. *Good will—Labels and wrappers—Protection, what afforded.*—The good will of a business, as embodied in labels and wrappers bearing the name of the concern, or other brands or marks, will be protected on principles analagons to those applied in cases of infringement of trade marks.

6. *Exclusive right to manufacture articles—Infringement on—Measure of damages.*—Where defendant has infringed on plaintiff's exclusive right to manufacture and sell certain articles, on a proper case presented he will be entitled to all the profits made by defendant therefrom, regardless of the question whether plaintiff's business has been interfered with, or his profits affected thereby.

7. *Good will—Violation of covenant of—Diversion of trade—Measure of damages—Evidence, what proper.*—Where in an action for violating a covenant not to manufacture a certain article, plaintiff merely charges that defendant has diverted plaintiff's patronage to himself, and thereby injured or destroyed the good will of plaintiff's business, without alleging any claim to the profits made by defendant on articles, the exclusive right to manufacture which belonged to plaintiff, or to the profits derived from the use of a trade mark, the exclusive right to which was in plaintiff, his measure of damages is not what defendant has gained, but what he has lost by the breach, whether defendant's profits have been greater or less than that amount. And in ascertaining plaintiff's losses, defendant's profits may be given in evidence in connection with the

diversion of customers from plaintiff to defendant, and the amount of plaintiff's purchases and manufactures and sales, and any reduction in the price of articles sold in consequence of the unlawful competition.

*Appeal from St. Louis Circuit Court.*

*A. J. P. Garesche,* for Appellant.

I. The demurrer to the petition should have been sustained by reason of the illegality of the contract. (Addison Contr., 100, § 100 ; Chit. Contr. [48th ed.], 664 ; Id., note to p. 665 ; Comyn. Contr., 438 ; Sto. Contr., [6th ed., vol. 1,] p. 677, § 550 ; Id., 684, § 553 ; Smith Contr., 212, § 128 ; Parsons Contr., 2d vol., 750 & note ; Long vs. Towl, 41 Mo., 398.)

II. Plaintiffs were not entitled to recover, because of their fraud in the procurement of the contract. And it matters not how trivial the damage. (Smith vs. Kay, 7 House Lords, 775.)

III. Plaintiff's recovery is limited to his actual injury by the breach of the contract. (Sedg. Dam., §§ 36, 37 ; Id., § 229 ; Calvin vs. Jones, 3 Dana, 577 ; Thompson vs. Jackson, 14 B. Mon., 118 ; Olmstead vs. Burke, 25 Ill., 86 ; Blair vs. Milwaukie, 20 Wis., 262.)

IV. Hence, evidence of what defendant made was illegal, because of a collateral undertaking, and hence too remote. (De Benedetti vs. March, 1 Hilt. [N. Y.], C. P. 213 ; Gilpin vs. Consequa, 1 Pet. C. C., 95 ; Ashe vs. Le Rossett, 5 Jones Law [N. C.], 301 ; Dubuque W. & Coal Ass. vs. City Dub., 30 Iowa, 184 ; Eisenlohr vs. Swain, 35 Pa., 107 ; Lowenstein vs. Chappell, 30 Bar. [S. C.], 241 ; Travis vs. Duffa, 20 Tex., 56 ; Rhodes vs. Baird, 16 Ohio, 573 ; Wainrich vs. Chase, 23 Md., 156 ; Harwood vs. Lappan, et al., 2 Speers, 550 ; Lillivant et al. vs. Reardon, 5 Ark., 156 ; Taylor vs. Maguire, 12 Mo., 319 ; Hamlin vs. St. Win. R. R., 38 Eng. L. & E., 338 [Williams] ; Boyle vs. Reeder, 1 Ind., 614 ; Abbot vs. Satch, 13 Md., 332 ; Weime vs. Kelly, 34 Iowa, 339 ; Rajars vs. Berniers, 69 Pa., 34 ; Fox et al. vs. Harding, 7 Cush., 522 ; Story vs. N. Y. & H. R. R., 6 N. Y., 90 ; Bridges vs. Stickney, 38 Me., 368 ; Horner vs. Wood, 16 Barb., 387.)

*Bereman & Smith*, for Respondent, cited in argument Chappell vs. Brockway, 21 Wend., 160 ; 2 Pars. Contr., 748 ; Presbury vs. Fischer, 18 Mo., 50 ; Long vs. Towl, 41 Mo., 398 ; Mitchell vs. Reynolds, 1 P. Will., 181 ; Mallan vs. May, 13 M. & W., 511 ; 11 M. & W., 653 ; Lange vs. Werk, 22 Ohio, 520 ; Green vs. Price, 13 M. & W., 695 ; Beard vs. Dennis, 6 Ind., 200 ; Thomas vs. Miles, 3 Ohio St., 274 ; Elves vs. Crofts, Jur. vol. 14, p. 855 ; Pow. Contr., 114 ; Fox vs. Harding, 7 Cush., 516 ; Billings vs. Ames, 32 Mo., 265 ; Jenkins vs. Temples, 39 Ga., 655 ; Dakin vs. Williams, 17 Wend., 447 ; Mitchell vs. Reynolds, *supra ;* 1 Smith's Lead. Cas., Part II, p. 1 ; Gilman vs. Dwight, 13 Gray, 356 ; Oregon Steam Nav. Co. vs. Winsor, 20 Wall., 64 ; Gillis vs. Hall, 2 Brewster, 342 ; Boutelle vs. Smith, 116 Mass., 111 ; Dean vs. Emerson, 102 Mass., 480 ; Hardy vs. Martin, Bro. Ch. R., 1798, fol. 341 ; Slowman vs. Walter, 1 Bro. Ch. R., 366 ; Scott vs. Mackintosh, 1 Vesey & Beames, 503.)

Plaintiffs were not limited to the profits made by defendant as to their damages. (Pitts vs. Hall, 2 Blatchf., 229 ; Graham vs. Peate, 40 Cal., 593 ; Jenkins vs. Temples, 39 Ga., 655 ; Scott vs. Mackintosh, 1 Vesey & Beames, 503 ; Warren vs. Jones, 15 Mo., 146.)

Hough, Judge, delivered the opinion of the court.

On the 24th day of July, 1865, the defendant, who was a manufacturer of and dealer in matches in the city of St. Louis, entered into a contract under seal with the plaintiff, Peltz, and one Brunaugh, for the sale to them, for the sum of $20,000, of his entire factory and stock in trade, together with good will, proprietary stamp, trade marks, brands, and the use of the names of A. Eichele and A. Eichele & Co., employed by him in said business. This contract contained the following covenant: "Said Eichele, further covenanting, agrees that he will not enter into the manufacture of matches at this or any other place for the term of five years, nor lend his influence, skill, name or countenance, to any other party or parties so engaged, to the detriment of the business thus transferred."

The consideration was paid and the property, real and personal, was regularly transferred. Soon thereafter, Brunaugh assigned and conveyed to the plaintiff, Allen, all his interest in the contract, and in the property acquired from the defendant. In June or July, 1866, the defendant erected a new factory in the city of St. Louis, about six blocks distant from the one he sold to the plaintiff, and at once engaged in the manufacture and sale of matches, under the name and style of P. Eichele & Co.

In August, 1869, the plaintiffs sold their factory and stock to the defendant, and in March, 1872, they instituted the present action against the defendant for a breach of the covnant hereinbefore recited, and further averred that the defendant influenced the patrons of the firm of A. Eichele & Co. to become the patrons and customers of P. Eichele & Co., and thereby injured and destroyed the good will of the business so sold by him.

The foregoing are the only breaches alleged. This is important, as it disposes of all that portion of the evidence and argument of counsel as to the use by the defendant of the trade mark sold by him to the plaintiffs.

The defendant denied the breaches alleged and averred that he was induced to enter into said contract through the false representations of Peltz & Brunaugh, that Allen, to whom the defendant had refused to sell, was not and should not become interested in the purchase; whereas, Brunaugh bought for said Allen, and not for himself; of all which the plaintiff Allen was cognizant, and to which he was a party. This was denied by plaintiff.

The testimony, preserved in the bill of exceptions as to the damages suffered by reason of the injury complained of, pertained chiefly to the profits made by the defendant, the solicitation by him of orders from his former customers, and the decline in the plaintiff's business. The testimony is general and somewhat indefinite, and is declared by plaintiff's counsel to be partial and incomplete; and they very earnestly contend on the authority of former decisions of this court, that we cannot pass upon the propriety of the action of the

trial court in giving and refusing instructions, nor can we undertake to pronounce upon the sufficiency of the testimony to support the verdict, inasmuch as the bill of exceptions does not recite that it contains all the evidence.    We mention this matter, not because we deem it to be of any practical importance in this case, but simply in order to call attention to Rule No. VII, which was adopted by this court on that subject at the October Term, 1871, and, though published in the 48th vol. of our reports, seems not to have attracted the general attention of the bar.

The following instructions were given at the instance of the plaintiffs:

1st.  The court instructs the jury, that if they find from the evidence that the defendant sold to Peltz and Brunaugh the match factory, property and appurtenances, stock in trade and business of manufacturing matches in St. Louis, and the good will of the business, and proprietary stamp thereof, and the right to use the name of A. Eichele & Co., and the right to use the name of A. Eichele and A. Eichele & Co., and the right to use the same label or trade mark, then used by the defendant, and agreed with them not to re-enter into the business in St. Louis for five years, nor to lend his name, skill, influence or countenance to any other persons so engaged, to the detriment of the business so transferred, and that such sale and agreement were not procured by any fraud or misrepresentation, which resulted in any injury to defendant, and that Brunaugh transferred to plaintiff Allen his interest in said property, business, good will and agreement; and that plaintiffs, or Peltz and Brunaugh, paid defendant a valuable consideration therefor; and that defendant, during any part of said five years, did enter into and engage in the manufacture of matches at St. Louis, while plaintiffs were still in said business so purchased of him; or that defendant, at St. Louis, during or at any part of said time, did lend his skill or influence, or name, or countenance to others so engaged, to the detriment of the business so transferred, or injured or destroyed the good will of said business of plaintiffs, then the plaintiffs are entitled to recover in this action.

2d. The court instructs the jury that, if they find from the evidence and the law as given them by this court, that the plaintiffs are entitled to recover in this action, then they are entitled to recover as their damages the actual amount of loss and injury sustained by them, which was the natural, direct and immediate result of the violation of his agreement, if any, by the defendant.

3d. The court instructs the jury that, if they should find from the evidence, that Brunaugh was not the real purchaser, and that his name was used as the ostensible purchaser, while Allen was the real purchaser; yet, if they should further find that defendant received from the plaintiffs, or from Peltz and Brunaugh, all he asked for his said property and business, and the good will, and no injury resulted to defendant from such alleged concealment of the real purchaser, then such facts, or the further fact, if true, that he would not have sold to Allen, is no defense to this action.

To the action of the court in giving the foregoing instructions, the defendant, at the time, excepted.

The court gave the following instructions at the instance of the defendant:

1st. The jury are instructed, that the measure of damages is not the difference of plaintiff's profits, subsequent to the re-entry of defendant into the business, but only so much of this difference as was reaped by defendant, and the proof of how much was thus reaped by defendant devolves on the plaintiff.

2d. The jury are instructed that the evidence, so far as it is contained in the partnership books of plaintiffs, is withdrawn from the jury and to be disregarded by them.

3d. The jury are instructed, if they believe from the evidence that any one witness has sworn falsely, they are at liberty to disregard the whole of his testimony.

The following instructions, asked by the defendant, were refused by the court, and the defendant excepted:

1st. The jury are instructed that, while, as a part of the circumstantial proof in the cause, plaintiffs have been per-

mitted to show their sales during the several years, the jury are not to adopt as the measure of damages the profits of one year computed on sales compared with those computed on the sales of another year, unless they believe from the evidence, that the difference between the sales of the different years had no other cause than that the defendant re-entered into the business. Hence, if the jury believe from the evidence, that the customers, who left plaintiffs to return to defendant, bought not solely of defendant, but of other parties, then the measure of damages would be only upon the sales made by defendant, and the proof of this amount devolves on plaintiff, and the jury, in the absence of proof, cannot presume what amount they were.

2d. If the jury believe from the evidence that the contract of Eichele with Peltz and Brunaugh was obtained from Eichele upon the assurance and representations of Peltz and Brunaugh, or either of them, that Allen was to have no interest therein, and after Eichele had told Peltz or Brunaugh that he would not sell to them if they were interested with Allen in the purchase, and the consent of Eichele to the contract was given upon the assurance that Allen was not to be interested with Peltz and Brunaugh ; and the jury believe from the evidence that these assurances and representations were untrue, and made for the express purpose to deceive defendant, the jury will find for the defendant.

There was a verdict and judgment for $10,000, which was affirmed at General Term, and defendant has appealed to this court.

Defendant demurred to the plaintiffs' petition on the ground, that the contract sued on was illegal and void, and the facts stated constituted no cause of action, and the same objection is made in this court. When the demurrer was withdrawn, and the answer was filed, the case stood precisely as it would if no demurrer had ever been filed. The defendant did not move in arrest of judgment. The objection now made, however, being a matter of error and not of exception, must be entertained by us, though made for the first time in

12—VOL. LXII.

this court. It has been uniformly held, that, for material error apparent on the face of the record, we will reverse the judgment of an inferior court, although no exception was taken therein. (Bateson vs. Clark, 37 Mo., 31.)

The defendant's objection to the sufficiency of the petition is based upon the assumed illegality of his covenant not to engage in the manufacture of matches in the city of St. Louis, or at any other place, for a period of five years. This covenant is claimed to be void, as being in restraint of trade. Contracts of this character are not now regarded by the courts with so jealous an eye as formerly, and it is not at all apparent that any of the mischievous consequences sought to be prevented by the adoption of the early rule on this subject would ensue if the entire contract in this case were held to be valid. The covenant, however, is manifestly a divisible one, and that portion of it which restrains the defendant from engaging in the manufacture of matches in the city of St. Louis, for the time stipulated, is clearly reasonable and valid, whatever may be thought of the remaining restriction, as to "any other place." (Dean vs. Emerson, 102 Mass., 480; Thomas vs. Adm'r of Miles, 3 Ohio St., 274; Green, Ex'r, vs. Price, 13 M. & W., 694; Presbury vs. Fischer & Bennett, 18 Mo., 50.) The action here is for the breach of that portion of the covenant relating to St. Louis.

The contract sued on being valid, the plea of fraud on the part of Peltz, Brunaugh and Allen, in procuring it to be made, will next be considered. Without intending to decide that the facts pleaded could, under any circumstances, entitle the defendant to relief, it is proper to observe that, according to the defendant's own testimony, the contract had not been fully performed when he discovered the existence of the very facts of which he now complains, and yet, he completed it without resistance or remonstrance. It is true, he says, he afterwards offered to buy back, at an advance, the interest Allen was to get, or the entire property; but he brought no action and took no steps for the rescision of the contract of sale, and three years after it was consummated he purchased

back from the plaintiffs, in the ordinary way of trade, the very property, the contract for the sale of which, to them, he now seeks to invalidate.

These considerations, coupled with the fact that the defendant sold his property without any conditions on this subject, and received full value for the same, disentitle him to a hearing on this plea of having been fraudulently induced to make the sale. As it clearly appears that there has been a breach of the covenant sued on, for which plaintiffs have a right of action, our most important inquiry is as to the measure of the plaintiff's damages, and the mode of ascertaining them. We have been referred to a number of cases on the measure of damages in patent and trade-mark cases as containing the true rule for our guidance in the case at bar. These cases are somewhat similar, but not analogous to the present one. The rule adopted in cases for the infringement of a patent is not strictly applicable to a case for the infringement of a trade mark; and neither the rule applicable in trade marks, nor in patent cases, is fully applicable to the case at bar. The good will of a business as embodied in a firm name, or in the labels used, will be protected on principles analogous to those applied in cases of infringement of trade marks. It is true that a trade mark is held by some of the text writers, and, perhaps, in some adjudicated cases, to be a part of the good will, and necessarily included in a sale thereof.

The object in purchasing the good will undoubtedly was to retain the old customers of A. Eichele & Co., and labels or wrappers bearing the name of the firm, or other brands or marks, by which the goods, manufactured by that firm, might be identified, are *quasi* trade marks. But there is no allegation that the good will transferred to the plaintiffs was in any way injured or impaired by defendant having used his trade mark or labels.

The profits made by the defendants, therefore, to which the plaintiffs claim they are entitled, are not the profits made on articles, the exclusive right to manufacture and sell which belonged to the plaintiffs, nor the profits derived from the

use of a label or trade mark, the exclusive right to which was in the plaintiffs, though the exclusive right to make the goods on which it was used, was not in the plaintiffs; but the profits realized from the general decline and diversion of the plaintiffs' business, occasioned by defendant. If plaintiffs lost less than the defendant made, they cannot recover the whole of defendant's profits; if plaintiffs lost more than the defendant made, they would not be limited to defendant's profits. What the plaintiffs have lost by the defendant's breach of covenant, and not what the defendant has gained thereby, is the legal measure of damages in this case. If the plaintiffs had manufactured matches to the utmost capacity of their factory, and sold all they made at unreduced prices, notwithstanding the defendant may have, in violation of his covenant, engaged in the same business in St. Louis, and realized large profits, the plaintiffs could only have recovered nominal damages, for, in that case, they would have lost nothing. On the other hand, if the defendant had infringed the exclusive right of the plaintiffs to manufacture and sell a. particular article, the defendant, in an action against him for damages, would be held to account to them for all profits made by the manufacture and sale of such article, regardless of the fact, whether he thereby interfered in any manner with the plaintiffs' business or his customers, in any particular place, or whether the product of the plaintiffs' factory and their sales were in any manner affected thereby or not; and this is understood by us to be the rule in patent cases. In such cases, the entire profits are taken, because the defendant has no right at all to deal in the article, and must account as a kind of trustee for what he has made from another's capital, while in the present case, he will be held to respond in damages only for the injury he has inflicted upon the plaintiffs by reason of his dealing in the article at a particular place, in violation of his covenant. In ascertaining the amount of this damage, the profits made by the defendant constitute an element; but only such profits made by the defendant as the plaintiffs have lost by reason of the wrongful act of the de-

fendant complained of in the petition. In ascertaining the profits lost to the plaintiffs, the profits made by the defendant may properly be given in evidence in connection with the diversion of customers from plaintiffs to defendant, and the amount of their purchases, the product of the plaintiffs' factory, and the amount of their sales, and the reduction in price of the articles sold, if any, in consequence of the unlawful competition of defendant.

By the first instruction given for the defendant, which inaccurately stated the measure of damages by confining it to profits, but of which he has no reason to complain, the burden of proof was declared to be upon the plaintiffs to prove what proportion of the profits, received by the defendant, they were entitled to recover as a part of their loss; and the only question remaining to be considered in this connection, is, whether there is any testimony whatever, tending to support the verdict.

The defendant himself testified that from 1866 to 1869 he received about $10,000 in profits from his business. It was in evidence that several large dealers and a number of small ones, who were customers of A. Eichele & Co., and the amount of whose monthly orders was in some instances given, purchased of the defendant, at his solicitation, after he began business under the name of P. Eichele & Co. It was shown that plaintiffs' sales during the first year amounted to $125,000 at least, and their profits during the same period, with a few months added, were $20,000, and that, after the defendant engaged in business, the annual sales were reduced to about one-half, and that prices also declined from ten to twenty per cent. It would be impossible in a case like the present for the plaintiffs to prove with accuracy the damages they have sustained; but the data, from which the jury might reasonably infer the amount of their loss, were in evidence, and it is not for the defendant to say that there was obscurity in matters, which it was peculiarly within his power to have made plain. We cannot say that there is no testimony tending to support the verdict. The plaintiffs' instructions were entirely unob-

jectionable, and, together with the instructions given for the defendant, presented the case fairly enough to the jury.

The court committed no error in refusing the two instructions asked by the defendant; and the judgment will be affirmed. All the judges concur, except Judge Vories, who is absent.