LORENZO LINCOLN & others *vs.* HENRY P. EATON & others.

Bristol.   Oct. 27, 1881. — Jan. 2, 1882.   MORTON & ALLEN, JJ., absent.

If, on a bill in equity, the full court affirms the decree of a single justice determining the defendant's liability and ordering the case to be sent to a master to state the account between the parties, it will not, after a petition for a rehearing has been overruled, and after it has declined to amend the rescript, entertain, on appeal from a decree of a single justice ordering judgment in accordance with the master's report, a motion for a rehearing on the question of the defendant's liability.

B., who held a second mortgage on a parcel of land which had been advertised for sale under a first mortgage, entered into an agreement with A., by the terms of which A. was to buy the land for $10,100 and hold it for the benefit of both; B. was to give A. his note for $5000, to be indorsed by A., towards the payment of the amount due on the first mortgage, and to indorse such other notes as should be given therefor, and the two should share any loss or gain on the estate equally; and A. also agreed to provide for the payment of B.'s notes, and to attend to furnishing all money required for the payment of all the notes given. The estate was subsequently sold by agreement of parties, and bought by A. for $600. On a bill in equity by A. against B. for an account, A. alleged that the estate was in his opinion worth more than $600, and that he was willing that B. should be credited with one half of that sum, or should take a deed of one half of the estate. The court ordered that the estate should be sold under the direction of the master to whom the case was sent to state the account. It was accordingly sold, and brought but $295.75. *Held*, on exceptions to the master's report, that B. was properly chargeable with his share of

moneys paid by A. for discounts of B.'s notes given in pursuance of the agree-
ment; for stamps on the same and for protests thereof; for discounts of the
notes of third persons received by A. in payment of personal property of the
mortgaged estate sold by him; for interest on the note given by A. to the first
mortgagee in part payment for the mortgaged estate; for the expenses of the
sale of the estate to A.; and for moneys paid by A. while he was in possession
of the estate for repairs, taxes and other expenses necessary for the preserva-
tion of the estate.

GRAY, C. J. This is a suit in equity, by Lorenzo Lincoln,
Joseph Philbrick and three other persons, against Henry P.
Eaton, Rufus Moulton and Adam Beck. The questions now
presented for our determination will be made more intelligible
by a recital of the previous proceedings in the cause.

The bill alleged that the plaintiffs were in partnership in
Taunton and Dighton as manufacturers of paper under the style
of Lincoln & Co., and the defendants were in partnership at
Newton as manufacturers of machinery for the manufacture of
paper under the style of Eaton, Moulton & Co.; that the de-
fendants held a second mortgage of a paper mill and machinery
in Franklin, upon which Charles H. Gass held a prior mortgage
of $8000, and which, on March 23, 1870, he had advertised for
sale under a power contained in his mortgage; and that on
April 8, 1870, the defendants, being interested in having that
estate bring as much as possible over the mortgage of Gass,
entered into an agreement in writing with the plaintiffs to share
any loss or gain that might arise from the purchase of the estate
by the plaintiff Lincoln at that sale for the sum bid by him,
namely, $10,100; the plaintiffs agreeing to hold the estate for
the mutual benefit of both firms; which agreement was as
follows:

"Agreement between L. Lincoln & Co., of Dighton, and
Eaton, Moulton & Co., of Newton, Mass. Eaton, Moulton & Co.
agree to give said L. Lincoln & Co. their note, dated this day,
for five thousand dollars, on three months, to be indorsed by
said L. Lincoln & Co., and the proceeds of said note, after pay-
ing the amount due to Charles H. Gass, as per agreement, on
the sale of the Franklin Mills estate, is to be paid to said Eaton,
Moulton & Co.; and it is hereby agreed that said L. Lincoln
& Co. shall provide for the payment of said note at its maturity;
and Eaton, Moulton & Co. agree (if desired) to give another

note to take the place of the above-mentioned note, but with the same understanding as the above, at its maturity. Eaton, Moulton & Co. also agree to indorse such other note or notes to be given to Charles H. Gass in part payment for his deed assignment of real or personal estate of eight thousand dollars and interest on said Franklin Mills estate. L. Lincoln & Co. hereby agreeing to take a deed assignment of mortgage, both of real and personal estate, from Charles H. Gass, of the aforesaid mill estate, holding the same for the mutual benefit of both firms; and Eaton, Moulton & Co. agree to bind themselves equally with L. Lincoln & Co. to share any loss or gain that may arise from the sale, or any other disposition both parties may agree to; but it is agreed on the part of said L. Lincoln & Co. that they will attend to furnishing all money required for the payment of all notes given, unless otherwise agreed. The price of the mill is to be the amount of Mr. L. Lincoln's bid at the sale, viz. ten thousand one hundred dollars. Boston, April 8, 1870. Eaton, Moulton & Co. L. Lincoln & Co."

The bill then alleged that, with the knowledge and consent and for the benefit of all parties interested, the following transactions took place : The estate was conveyed to the plaintiff Lincoln, and held by him for a long time. The plaintiffs raised and paid the money for the estate, to wit, the sum of $10,100, and laid out large sums of money for and concerning the estate, and spent much time and labor in managing and disposing of it. The estate, having much depreciated in value, was afterwards put up for sale by public auction and struck off to the plaintiff Philbrick, who was the highest bidder therefor, for the sum of $600.

The bill alleged that " the plaintiffs understood said sale to be a *bona fide* and final sale and disposition of said estate, and made for the purpose of determining the value of said estate and closing up said joint adver..ure; but, nevertheless, as said estate was and is, in the opinion of these plaintiffs, of more value than said six hundred dollars, said Philbrick and these plaintiffs hereby consent that said estate shall be held and considered the joint property of all said parties as before the sale to him, if the defendants so desire ; " and that " whether said sale is or is not a final disposition of said property, said estate has been fully

paid for by them, and all the outstanding liabilities therefor also settled by them, and nothing now remains to be done except to ascertain the net loss upon said joint adventure, and for the defendants to pay the plaintiffs one half of the same, and, if they desire, to take a deed of one undivided half of the property still remaining undisposed of, which these plaintiffs are now ready and willing, and hereby offer, to make."

The bill further alleged that, as appeared by an account, filed therewith, of disbursements for and receipts from the joint property on joint account, the net loss was $6009.76; and prayed for process; for an order that the defendants should elect whether they would or would not accept a deed of an undivided half of the estate, or whether the $600 should be credited to the joint adventure as so much realized from the estate; and for an account, and for further relief.

The bill was taken for confessed against Eaton. Moulton and Beck filed an answer, denying that they ever made any agreement with the plaintiffs as alleged in the bill, and averring that, if that agreement was signed by any one of the defendants, it was signed by Eaton without right or authority, and was not within the scope of the business of their partnership, and bound no one but himself; denying that any valid sale or conveyance of the estate was ever made to the plaintiff Lincoln or for the benefit of the defendants, or that the plaintiffs had raised and paid the sum of $10,100, or had spent money, time and labor as alleged, or that the estate was by mutual consent put up for sale by auction or sold and conveyed to Philbrick, or that the sale to him was valid, or that the plaintiffs had performed any of their obligations under said agreement, if ever made, or had fully paid for the estate, or had settled all their liabilities on account thereof, or that the defendants could be required to elect as prayed for; averring that, before the alleged sale to Philbrick, the defendants' partnership had been dissolved, and that the plaintiffs owed them a large sum for services, materials and expenses supplied and incurred by the defendants in connection with the plaintiffs' dealings with the estate; and denying every item of the plaintiffs' account.

The plaintiffs filed a general replication; and the case was heard upon the pleadings and proofs before the late Mr. Justice

*Ames.* It appeared, among other things, that at the sale by Gass under the power in his mortgage, the plaintiffs purchased the estate for the sum of $10,100, which exceeded the amount due on that mortgage by $684, less than enough to pay the defendants' mortgage ; and the judge made a report of all the material · facts established by the evidence, and thereupon entered the following decree : " It appearing to the court that the plaintiffs and the defendants were jointly interested in the purchase and sale of the property, as alleged in the bill, and in the profit or loss arising from the disposition thereof, and that both parties have an account for expenses and services incurred upon or for the joint property : It is therefore ordered and decreed that the cause be referred to " a master, " to examine and state the account between them, and report how much, if anything, is due the plaintiffs from the defendants in order to make the profit or loss on said transaction equal between them ; and in stating said account, unless the defendants shall elect at the hearing before said master to take a conveyance of an undivided half of said property, the plaintiffs shall be charged with the sum of six hundred dollars as the proceeds of the sale and conveyance to said Philbrick stated in the bill ; and if such election shall be made, then such conveyance shall be made to the defendants."

From that decree an appeal was taken by the defendants Moulton and Beck, and was argued at October term 1879 before the full court, which, on consideration thereof, was of opinion that, upon the facts reported, all the defendants, including Beck, must be held as matter of fact to have assented to the agreement, and he could not be relieved from liability as a member of the firm ; but that, as the plaintiffs in their bill admitted that the sale to Philbrick was for less than the fair value of the estate, and consented that the estate should be held as the joint property of both firms, the decree should be modified by declaring that, upon the facts admitted in the bill and appearing on the record, the sale and conveyance to Philbrick stated in the bill were void, and by ordering that a new sale and conveyance be made under the direction of the master, that the master in making up the account include the amount received at such sale, and that Philbrick execute, by way of confirmation of

such sale, such conveyance as the master should order ; and on April 5, 1880, entered a rescript and decree accordingly.

In accordance with the statutes of the Commonwealth, and with the settled practice of the court, as that decision involved no question of law, but proceeded upon a mere question of fact, no extended opinion was prepared, and no report published.   Gen. Sts. *c.* 121, § 52.   *Reed* v. *Reed*, 114 Mass. 372, 373.

On May 3, 1880, the defendant Beck presented a petition for a rehearing, upon the ground that the question reserved by the report was whether, as matter of law upon the facts reported, he had consented to the agreement, whereas the full court had found such consent as matter of fact.   Upon consideration of that petition, the full court denied a rehearing.

On July 20, 1880, he filed in the cause, in the clerk's office in the county of Bristol, a motion that, for the reasons assigned in the petition for a rehearing, and in order to present the question of law intended to be raised by the report, the decree entered as directed by the rescript be vacated, the judge's report amended, and the case heard upon the amended report.   On the same day he presented a petition to the full court for a modification of the form of the rescript, for the same reasons, which was afterwards refused.

On appearing before the master, he moved for a postponement of the hearing, because of the pending motion to vacate the decree.   But the master overruled the motion to postpone, proceeded with the hearing, reported to the court that pursuant to its decree he had resold the property, and held the net proceeds of the sale, being $295.75, subject to its order ; stated the amount due to the plaintiffs, after deducting the amount due to the defendants, at $5990.66 ; and charged the defendants with one half thereof, namely, $2995.33, and interest to the date of his report.

The defendants Moulton and Beck filed exceptions to the allowance by the master of the following classes of items in the plaintiffs' account: 1st. Moneys paid by the plaintiffs for discounts of the notes of the defendants mentioned in the agreement of April 8, 1870, or for stamps thereon or protests thereof ; for discounts of the notes of third persons received by the

plaintiffs in payment for machinery of the Franklin Mills estate sold by them; and for interest on the note given by the plaintiffs to Gass in part payment for that estate. 2d. Money paid to the auctioneer for services in the sale of the estate to Philbrick, which had been declared void by the court. 3d. Moneys paid by Philbrick for taxes, repairs and flowage, and other expenses necessarily incurred by him while he held the estate under that sale.

Upon a hearing before Mr. Justice *Endicott*, the motion to vacate the decree of the full court was disallowed, the exceptions to the master's report were overruled, and a final decree was entered for the plaintiffs for the sum of $295.75 in the hands of the master, and for the amount found due by him less that sum, and for interest from the date of his report, and for costs.

The defendants Moulton and Beck appealed to the full court; and, when the case came on for argument, presented a new application for a rehearing upon the same grounds stated in the first petition, which had been denied by the full court.

A decree entered in accordance with the rescript of the full court is not a subject of appeal. *Humphrey* v. *Baker*, 103 U. S. 736. Matters determined by the full court before reference to a master are not to be opened anew upon exceptions to his report. *Pingree* v. *Coffin*, 12 Gray, 288, 315. A petition for a rehearing of a case decided by the full court is addressed exclusively to its discretion, and is not granted, nor permitted to be argued, unless the court on inspection of the petition so orders. *Winchester* v. *Winchester*, 121 Mass. 127. The question presented by the motion to vacate the decree entered by direction of the full court, and by the last application for a rehearing, has been thrice decided by the full court, — on the original appeal, on the first petition for a rehearing, and on the petition to amend the rescript, — and cannot be permitted to be argued anew. The motion to vacate the decree was therefore rightly disallowed, and the application for a rehearing cannot be received. The court announced its opinion upon this part of the case before hearing the argument on the exceptions to the master's report, and has taken time to consider the questions presented by those exceptions.

By the contract of copartnership between the plaintiffs and defendants, it was agreed that the plaintiffs should purchase the estate for the sum of $10,100 and hold it for the mutual benefit of both firms ; that the defendants should give, and if necessary renew, their note to the plaintiffs for $5000, to be indorsed by the plaintiffs, towards the payment of the amount due on the first mortgage, and for the assignment of that mortgage, and should indorse such other notes as should be given therefor ; and that the two firms should share any loss or gain that might arise from the sale, or other disposition that both parties might agree to, of the estate. The plaintiffs agreed to "provide for the payment of " the notes of the defendants, and to " attend to furnishing all money required for the payment of all notes given, unless otherwise agreed ; " but they did not agree themselves to furnish the money. The money obtained by them by discounting the notes given by the defendants for the discharge and assignment of the first mortgage, and the notes given by third persons to the plaintiffs in payment for part of the partnership estate sold by them, was obtained by the plaintiffs in behalf of the partnership ; and the expenses of obtaining it, as well as the interest paid on the note given by the plaintiffs themselves to the first mortgagee, were expenses incurred by the plaintiffs in behalf of the partnership. The sums so obtained or paid by the plaintiffs were not in the nature of contributions to capital, but were advances made by them to the partnership of money obtained or paid by them in its behalf, pursuant to the authority and duty imposed upon them by the terms of their agreement with their copartners ; and the expenses and payments of the plaintiffs in the premises were rightly allowed by the master in making up the account between them. *Baker* v. *Mayo,* 129 Mass. 517. *Morris* v. *Allen,* 1 McCarter, 44. *Barfield* v. *Loughborough,* L. R. 8 Ch. 1, 5. 2 Lindl. Part. (4th ed.) 787.

The former sale of the estate to Philbrick having been set aside by the court, not for any fraud or illegality therein, but because the plaintiffs admitted that it was for less than the fair value, and consented that it should be set aside and the estate held for the benefit of the partnership between them and the defendants, no reason is shown why the expenses of making that sale should not be allowed in the partnership account.

The sums paid by Philbrick, while he held the record title, for taxes, repairs, flowage and other similar expenses, might also be properly allowed, if necessary for the preservation of the estate, as the master has found them to be. Under the order of reference to the master, it was his duty to report his final conclusions of fact; and he was not bound to report evidence, because not specifically directed so to do. *Jones* v. *Keen*, 115 Mass. 170. *Nichols* v. *Ela*, 124 Mass. 333, 335, 336. *Lee* v. *Willock*, 6 Ves. 605. *In re Hemiup*, 3 Paige, 305. It does not appear that Philbrick, while holding the estate, received any rents and profits, and there is nothing to overcome the weight of the master's finding on this point. *Boston Iron Co.* v. *King*, 2 Cush. 400, 405. *Dean* v. *Emerson*, 102 Mass. 480. *Carpenter* v. *Cushman*, 121 Mass. 265. *Nichols* v. *Ela*, 124 Mass. 337. *Decree affirmed, with interest and costs.*

*D. E. Ware*, for the defendants.

*H. J. Fuller*, for the plaintiffs.