## Joseph J. Lanzit v. J. W. Sefton Mfg. Co.

1. CONTRACTS—*Breach of, Equity Jurisdiction.*—The relief in equity, if any, to which a party is entitled for a violation of a contract, is predicated upon the reason that there is no adequate remedy at law.

2. SAME—*In Restraint of Trade.*—Parties may make a valid agreement in restraint of trade where the operation of the agreement is partial and limited under reasonable conditions, and where it is supported by a valid consideration.

3. SAME—*In Restraint of Trade in General—Against Public Policy.*—A contract in restraint of trade is general, when by it a party binds himself not to carry on his trade or business at all, or not to pursue it within the limits of a particular country or State. Such a general contract in restraint of trade, necessarily works an injury to the public at large, and to the party himself, in the respects indicated, and is against public policy.

4. EQUITY PRACTICE—*Harmless Error.*—Objections as to the admission of evidence on the hearing by the master, even if well taken, where they relate mainly to immaterial and unimportant items of evidence and can not affect the findings of the master nor the decree of the court, for the reason that there is sufficient competent evidence in the record to justify a decree, are not sufficient to warrant a reversal. It will be presumed that the master and the court both based their conclusions upon the competent proof.

5. RESTRAINT OF TRADE—*Contracts in, Must be Reasonable.*—A contract which is only in partial restraint of trade is valid, provided it is reasonable and has a consideration to support it. The restraint is reasonable when it is such only as to afford a fair protection to the interests of the party in whose favor it is imposed.

6. SAME—*Contracts in, are Divisible.*—Contracts in restraint of trade are divisible; a part may be held to be valid and a part void because of unreasonable restraint as to time or territory, or both.

**Bill for Injunction.**—Trial in the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Hearing and decree for complainant; appeal by defendant. Heard in this court at the October term, 1898. Affirmed, except as indicated and reversed with directions to modify, etc. Opinion filed June 12, 1899.

**Statement of the Case.**—Appellant and appellee made the following contract upon the considerations therein named, viz.:

"CHICAGO, ILL., February 3, 1897.

As a special consideration for the purchase this day by the J. W. Sefton Manufacturing Company, an Indiana corporation (doing business, also, in Chicago), from me of my share and interest in and to the said business heretofore conducted by himself and Mrs. Margaret Banks, at Chicago, Illinois, under the firm name and style of Joseph J. Lanzit Manufacturing Company, in accordance with the terms of a certain bill of sale, made at Chicago, Illinois, this day;

As a special consideration for the employment of me by said J. W. Sefton Manufacturing Company, as a salesman in accordance with a certain contract of employment, made at Chicago, this day, and for one dollar, and other good and valuable considerations, the receipt whereof I hereby acknowledge,

I, Joseph J. Lanzit, of Chicago, Illinois, do hereby expressly covenant and agree, as follows: That for the period of ten years from this 3d day of February, 1897, I will not anywhere in the United States of America directly or indirectly, either alone or with any other person, firm or

corporation, as employe, stockholder, officer, manager or otherwise, or in an advisory capacity, set up, follow or engage in the business of manufacturing, buying, selling, handling or dealing in paper receptacles, paper oyster pails, clothing boxes, foldingpaper boxes, or paper novelties of any kind or description whatsoever, nor will I furnish any other person, firm or corporation with any information relating to or concerning any of said business."

Then follows a paragraph identical with the last, except that the territory named, instead of the United States of America, is the State of Indiana or Illinois, and this in turn is followed by a paragraph in which the territory named is the State of Illinois, and it by a paragraph in which the territory named is Cook county, Illinois, after which is the following:

" All the above restrictions are subject to the exceptions of my employment with the said J. W. Sefton Manufacturing Company, as per said contract of employment this date.

In witness whereof, I have hereunto set my hand and seal at Chicago, Illinois, this 3d day of February, A. D. 1897.

Jos. J. LANZIT. [SEAL.]

FRED W. JOB, Witness."

The contract of employment mentioned above is dated 3d of February, 1897, between the Sefton Manufacturing Company and Lanzit, and is, in substance, that in consideration of the mutual covenants therein contained, among which was his agreement in the contract above, by the terms of which it is stated, " Lanzit agrees not to engage in the same business now conducted or hereafter to be conducted by the Sefton company for a certain length of time within certain territorial limits," it is agreed that the Sefton company employs Lanzit as a salesman, and Lanzit agrees to devote his entire and exclusive attention and energy in selling such goods for the Sefton company as it may designate, and at such places and prices as the Sefton company may designate, for the period of one year from the date of this contract, and that Lanzit shall receive $50 a month for the first six months; that if his sales from that period amount to more than $12,500 and less than $15,000, his wages during the last six months shall be $60 a month; if, during the first six

months, be sells over $15,000 worth, then during the next six months his salary shall be $75 a month; also, that he was to be paid his usual and ordinary expenses as a salesman.

The contract provides that he shall not engage in any other business during the time he is employed by the Sefton company, and is signed by both the company and Lanzit, and witnessed.

It appears that the business conducted by the Lanzit Manufacturing Company prior to said contracts of February 3, 1897, was a similar business to that of the Sefton company, theretofore and at that time, carried on by the latter company.

The business of the Sefton company since February, 1897, was manufacturing oyster pails, ice cream boxes, berry boxes, ice cream brick boxes of all kinds, starch boxes, cake boxes, cartons, charlotte russe boxes, and all boxes ordinarily used by bakers, soup boxes, flower boxes, corrugated paper boxes, corrugated paper of all kinds and descriptions, corrugated paper bottle packing, corrugated fillers, known as envelopes in corrugated paper, wooden bottle packing, Cuba Libre " ouches," and all styles of folding boxes, and all styles of envelopes in paper that can be cut in cutting or printing presses.   It also had facilities for cutting or printing all styles of paper that could be cut or printed, if they were required; but as a matter of fact it did not make any paper novelties except those specifically mentioned above.

It appears that charlotte russe boxes, paper boxes, pie plates, oyster pails, and all that class of goods are known as " paper novelties."

Appellant was an employe of appellee under said contract of February 3, 1897, until its expiration one year from that date, and thereafter, on March 1, 1898, he entered the employ of the Fred Rentz Paper Co., a corporation under a contract of that date, whereby he engaged to serve said company for the period of two years from the date of said contract as an employe, not only of said corporation,

but of one Fred Rentz, the president thereof, in any business that the said Rentz might require the services of Lanzit. On or about said March 1, 1898, said Rentz entered into copartnership with one Anna Rafferty, otherwise known as Anna Rafty, formerly an employe of appellee in the manufacture and sale of paper oyster pails, paper ice cream pails and kindred merchandise, under the name and style of the Chicago Oyster Pail Company. The said firm then rented a room in a building owned by said Fred Rentz, and has there conducted the business of dealing in said oyster pails, ice cream pails and kindred merchandise from thence hitherto. Said Fred Rentz caused to be placed in the room so occupied by the said Chicago Oyster Pail Company, a printing press, where said Lanzit was directed by said Rentz to, and has from thence hitherto, set up the type for and managed the printing of the said Oyster Pail Company, and where said Lanzit, under the instruction of said Rentz, has spent one-half of his time from said first day of March, 1898, to the date of the decree herein. The other half of the time of said Lanzit has been devoted to the interests of said Fred Rentz Paper Company as an employe in selling the product of the said Fred Rentz Paper Company. The business of the said Fred Rentz Paper Company, among other things, during all the time aforesaid, was and now is buying, selling, and otherwise dealing in paper oyster pails, paper novelties and kindred merchandise. Said Lanzit has in fact, and in an advisory capacity and otherwise, engaged in the business of dealing in paper oyster pails, and paper novelties in connection with the said firm, the Chicago Oyster Pail Company, and has furnished it information relating to said business.

It also appears that appellee's said business was, on February 3, 1897, and continually since that time has been, largely transacted from its office in the city of Chicago, in the State of Illinois; that the manufacturing conducted by it was on February 3, 1897, and theretofore and ever since has been largely conducted in the State of Indiana; that it also sells largely from Indiana and manufactures largely in

Illinois, and the said States of Indiana and Illinois are the States in which a large proportion of its selling business and all its manufacturing is done, and that the said facts relating to the business of appellee were well known to said Lanzit when he made said contracts with appellee.

May 4, 1898, appellee filed its bill against appellant, which was later amended, alleging, among other things, substantially the above matters, and asking an injunction against him from violating the terms of said contracts of February 3, 1897, between him and appellee, in so far as they apply to the States of Indiana and Illinois.

After appellant's demurrer to the bill was overruled he answered, admitting said contracts with appellee and with the Rentz Paper Co., but claims that the contract not to engage in business for the period of ten years from February 3, 1897, as stated, was made without any consideration, and therefore void, and was also void as being in restraint of trade and contrary to public policy, and denies that he had in any way violated it, and also denies that he had any partnership or business relations with Anna Rafty, or with the Chicago Oyster Pail Co. He also admits that he was in the employ of the Rentz Paper Co. under his said contract with it.

The issues being made, the cause was referred to a master to take proof and report his conclusions. The master took evidence and reported, among other matters not necessary to be stated, his conclusions of fact, in substance as above stated, which report, after objections thereto were overruled, was heard before the chancellor upon the objections, which were ordered to stand as exceptions, and confirmed. The decree entered by the chancellor finds also, in addition to the above stated matters, generally, that appellant had, since he left appellee's employ, violated his said contract of February 3, 1897, with appellee by doing the things therein prohibited, and restrains and enjoins appellant for the period of ten years from directly or indirectly, either alone or with any other person, firm or corporation, as employe, stockholder, officer, manager, or otherwise, or

in an advisory capacity, setting up, following or engaging in the business of manufacturing, buying, selling, handling or dealing in paper receptacles, paper oyster pails, paper clothing boxes, folding paper boxes or paper novelies of any kind or description whatsoever, and from furnishing any person, firm or corporation with any information relating to or concerning any of said business in the States of Indiana and Illinois, and each of them; and from continuing in the employ of the Fred Rentz Paper Company, during said period in the States of Illinois and Indiana, and each of them, and from dealing in any of said goods in connection with the Chicago Oyster Pail Company, or Fred Rentz, or Anna Rafferty alias Anna Rafty, in an advisory capacity or otherwise, and from furnishing information to said Chicago Oyster Pail Company, Rentz or Rafferty, or either or any of them, relating to the business aforesaid during the period aforesaid in the States of Illinois and Indiana, and each of them. From this decree the appeal is taken.

SAMUEL J. HOWE, attorney for appellant.

The contract relied upon by appellee, is in restraint of trade, against public policy, and void. Greenhood on Public Policy, 683, and cases cited. Talcott v. Brackett, 5 Ill. App. 60; Alger v. Thatcher, 19 Pick. 51; Cobbs v. Niblo, 6 Ill. App. 60; Frazer v. Frazer Lubricator Co., 18 Ill. App. 450; Hursen v. Gavin, 162 Ill. 377; Allbright et al. v. Teas, 37 N. J. Eq. 171, Ch. 12.

The question of the validy of the contract is one of law, and hence for the court, and if appellant's contention that the contract is void is correct, the demurrer to the bill should have been sustained. Talcott v. Brackett, 5 Ill. App. 60.

CHURCH, McMURDY & SHERMAN, attorneys for appellee.

It is settled law that such contracts in restraint of trade are valid, may be enforced in equity like other contracts, and that breaches of them will be restrained by injunction on the ground that no other remedy is adequate. 3 Am. &

Eng. Enc. Law, 885, and note. Thompson v. Andrus, 73 Mich. 557; Cowan v. Fairbrother, 32 L. R. A. 829; see also Lord Mamer v. Johnson, 1 Law Rep., Ch. Div. 673; Hodge v. Sloan, 107 N. Y. 248; Leslie v. Lorillard, 110 N. Y. 534; Tode v. Gross, 127 N. Y. 485; Oakdale Mfg. Co. v. Garst, 23 L. R. A. 641; Underwood v. Smith, 19 N. Y. Sup. 380; affirmed 135 N. Y. 661; Gibbs v. Baltimore Gas Co., 130 U. S. 409; Watertown v. Pool, 51 Hun, 162; Cowan v. Fairbrother, 32 L. R. A. 835; United States v. Addyston Pipe & Steel Co., 85 Fed. Rep. 283.

MR. PRESIDING JUSTICE WINDES, after making the above statement, delivered the opinion of the court.

It is claimed, first, that the allegations of the bill are not sufficient to sustain the decree; second, that there was error in the admission of evidence; third, that the decree is not sustained by the proof; and, fourth (which seems to be the principal contention of counsel), that the contract in question is void, as being against public policy and in restraint of trade.

The allegations of the bill and amendment thereto must be taken together in considering their sufficiency to sustain the decree. When so considered, it appears there are allegations of fact, in substance, of the matters contained in the statement preceding this opinion. They need not be here enumerated. It is sufficient that they are ample to sustain the decree to the extent that it should be sustained. The contention of appellant, that as the bill contains no allegation that any injury has accrued to appellee, or that any injury will accrue, it is, therefore, insufficient, is not tenable. The bill, as we have seen, alleges facts showing a continuing violation by appellant of his contract with appellee, and it is not essential that appellee should allege or prove that injury had or would result to it therefrom. The relief, if any, to which appellee is entitled for appellant's violation of the contract is predicated upon the reason that there is no adequate remedy at law. Damage to appellee is immaterial. 3 Pomeroy's Eq. Juris., Secs.

1342 to 1344, and cases cited in notes; 2 High on Injunctions, Sec. 1135; Steward v. Winters, 4 Sandf. (N. Y.), 587; Cowen v. Fairbrother, 32 L. R. A. 836.

2d. Numerous objections as to the admission of evidence on the hearing by the master are pressed upon our attention. Many of them are, in our opinion, well taken. They relate, however, mainly to immaterial and unimportant items of evidence, which should have been excluded by the master, but they can not affect the findings of the master nor the decree of the court for the reason that there is sufficient competent evidence in the record to justify a decree in appellant's favor. It will be presumed that the master and the court both based their conclusions upon the competent proof. Dunn v. Berkshire, 175 Ill. 243.

3d. We think the decree is, with the exceptions hereinafter noted, sustained by the evidence.

The contract of appellant with appellee, which binds him for a period of ten years from Februarp 3, 1897, not to engage directly or indirectly, either alone or with any other person, firm, or corporation, as employe, stockholder, officer, manager or otherwise; or in an advisory capacity set up, follow or engage in the business of manufacturing, buying, selling, handling or dealing in paper receptacles, paper oyster pails, clothing boxes, folding paper boxes or paper novelties of any kind or description whatsover; nor to furnish any other person, firm or corporation with any information relating to or concerning any of said business within the States of Indiana and Illinois, is admitted; and also the contract between appellant and the Rentz Paper Co., by which appellee undertakes to act as foreman and traveling salesman for the Rentz Co. for two years from March 1, 1898. He admits that he did work under this contract (and besides, it is abundantly proved) for the Rentz Co. The business of the Rentz Co., as testified to by the witness Rentz, and not denied, is that of dealing in all kinds of wrapping papers, paper sacks, a general line of store supplies for bakers, grocers and butchers, wrapping paper bags, oyster pails, ice cream pails, most all description of boxes,

whatever orders come into it, suit boxes, and paper novelties sold in boxes.

It is also shown by the clear preponderance of the evidence, that said Rentz and Rafty, from aboutMarch 1, 1898, up to the filing of the bill, were engaged in a like business to that of the Rentz Co., under the name of the Chicago Oyster Pail Co., and that appellant was in their employ during that time.

Both these employments of appellant constitute a direct violation of appellant's contract with appellee. The consideration named in the contract, to wit, the purchase by appellee of appellant's interest in the business of the Lanzit Manufacturing Company, and his employment by appellee at the salary stated, are good and valuable considerations, and sufficient to support the contract.

4th.    The claim that this contract—in so far as it applies to the States of Indiana and Illinois—is void as against public policy and in restraint of trade, is not, in our opinion, tenable.

In Cobbs v. Niblo, 6 Brad. 60, relied on by appellant, Mr. Justice Wall, speaking for the court (Fourth Dist.), says:

" The law is well settled that parties may make a valid agreement in restraint of trade where the operation of the agreement is partial and limited under reasonable conditions, and where it is supported by a valid consideration. The contract must be construed by the court, and its reasonable character determined."

In Talcott v. Brackett, 5 Brad. 60–67, also relied upon by appellant, this court, by Mr. Justice McAllister, said : " If the contracts are based upon a good and valuable consideration, and the limitation is reasonable, which is a question of law for the court, they are upheld and enforced."

In Hursen v. Gavin, 162 Ill. 377, cited by appellant, in which the court sustained a contract by which the retiring member of a firm engaged in the undertaking and livery business agreed not to engage in such business within the limits of Chicago for the period of five years, this language was used, viz.:

"A contract in restraint of trade is thus total and general when by it a party binds himself not to carry on his trade or business at all, or not to pursue it within the limits of a particular country or State. Such a general contract in restraint of trade necessarily works an injury to the public at large and to the party himself in the respects indicated and is, therefore, against public policy."

This statement was, we think, unnecessary to a decision of the case before the court, because the contract under consideration had reference only to a livery and undertaking business which had been and was to be carried on within the limits of the city of Chicago, and necessarily purely local in its nature.

The court also further says, citing authorities:

"But a contract which is only in partial restraint of trade is valid, provided it is reasonable and has a consideration to support it. The restraint is reasonable when it is such only as to afford a fair protection to the interests of the party in whose favor it is imposed."

The court also cites with approval cases holding that contracts of this nature are divisible—a part being held to be valid and a part void because of unreasonable restraint as to time or territory, or both. See Pelz v. Eichele, 62 Mo. 171; Gill v. Ferris, 82 Mo. 156, and Dean v. Emerson, 102 Mass. 480.

A recent and carefully considered case is Cowan v. Fairbrother, 32 L. R. A. 829, decided by the Supreme Court of North Carolina, in which it was held that a contract not to edit, print or conduct a newspaper, or be in any wise connected with one in that State, was valid. The court says:

"The older cases in which the courts attempt to fix arbitrarily geographical bounds, beyond which a contract to forbear from competition would not be enforced, have given way to the more rational idea of making every case dependent upon the surrounding circumstances, showing the extent as to time and territory of the protection needed. * * * Where the nature of the business was such that complete protection could not be otherwise afforded, the restraint upon the right to compete has been held good in one or more instances where it extended throughout the world and in other cases where it applied to a State, or to a bound-

ary including several States, and cites, in support of its holding, a number of recent English and American cases, among which was one in which it was held that a restriction applying to the entire Kingdom of Great Britain was justifiable, and another in which it was said that in the case of periodical publications which have a wide circulation, a restriction is valid which shall be as wide as the interest of a purchaser requires, ' though it may cover the whole of a State or the whole country.' "

In a recent case the Supreme Court of Rhode Island (Oakdale Mfg. Co. v. Garst, 23 L. R. A. 641) said :

" The test of reasonableness is the test of validity in contracts of this kind. The test is to be applied according to the circumstances of the contract, and is not to be arbitrarily limited by boundaries of time or space." * * * " The contract is to be determined by its subject-matter and the conditions under which it was made, by considerations of extensiveness or localism of protection to interests sold and paid for, of mere deprivation of public rights for private gain, of proper advantage on one side, or useless oppression on the other." * * * " No limitation of foreign countries could be made in advance, for the company was to seek its markets."

In Gibbs v. Baltimore Gas Co., 130 U. S. 409, it was said :

" Public welfare is first considered, and if it be not involved, and the restraint upon one party is not greater than protection to the other party requires, the contract may be sustained. The question is whether, under the particular circumstances of the case, and the nature of the particular contract involved in it, the contract is or is not unreasonable."

In Diamond Match Co. v. Roebor, 106 N. Y. 477, a contract was upheld by which it was agreed not to directly or indirectly engage in the manufacture or sale of friction matches, except as agent or employe of two named companies, anywhere within the United States or Territories, except in Nevada and Montana, for the period of ninety-nine years. The court say :

" The boundaries of the States are not those of trade and commerce, and business is restrained within no such limit. The country, as a whole, is that of which we are citizens,

and our duty and allegiance are due both to the State and Nation. Nor is it true, as a general rule, that a business established here can not extend beyond the State, or that it may not be successfully established outside the State. There are trades and employments which, from their nature, are localized ; but this is not true of manufacturing industries in general. We are unwilling to say that the doctrine as to what is a general restraint of trade depends upon State lines."

Also a contract as to manufacturing and selling typewriter supplies, with a time limitation of fifteen years, and no limit of space, the defendant's entire business not being sold, was held to be valid in Underwood v. Smith, 19 N. Y. Sup. 380, and was affirmed 135 N. Y. 661.

As we have seen, appellee's selling business was largely carried on in both the States of Indiana and Illinois, and all its manufacturing was done in those States, its business being largely transacted from its office in Chicago, all of which was well known to appellant when he made his contract with appellee.

There is no showing of any special facts or circumstances from which it can be said that the limitation of ten years is oppressive upon appellant, nor the limitation as to the States of Indiana and Illinois. Appellant is a printer by trade, and not confined to his business to earn his living. The latter limitation is separable from the broader one as to the United States. (Missouri and Massachusetts cases, *supra*.) No question of injury to the public is involved. The nature and extent of appellee's business is such that a reasonable and complete protection of it from appellant's competition could not be afforded with less than a prohibition throughout the States of Illinois and Indiana.

All the circumstances in evidence considered, we are of opinion that both the limitations as to time and to the States of Indiana and Illinois are reasonable, and, as was held in the Hursen case, 162 Ill., *supra*, the contract, being only in partial restraint of trade, and having a consideration to support it, is valid, and it should be enforced.

The only remaining question is as to the extent to which it should be enforced.

The business of the Rentz company and the Chicago Oyster Pail Company is similar to that of appellee, one part of which is the manufacture and sale of paper novelties at the time when appellant's contract was made, February 3, 1897, but the proof is that it did not make any paper novelties except certain ones specifically mentioned in the statement preceding this opinion, in which the nature and extent of appellee's business is stated. It is contended that the decree is too broad, in that it prohibits appellant from engaging in the business of manufactuaing or dealing in paper novelties of any kind or description whatsoever. He is bound by his contract to refrain from just such business and he can not now contend that the decree should be limited in this respect to the particular items which appellee was then engaged in manufacturing and selling. The inference, from the contract, is reasonable that appellee, as well as appellant, then had in contemplation an extension of appellee's business to other paper novelties, besides those then made and sold by it. The decree in this respect should stand. We are of opinion, however, that the decree is too broad in that it restrains appellant from continuing in the employ of the Rentz Paper Co. for the period of ten years in the States of Indiana and Illinois. This is not justified by appellant's contract nor the evidence, and the decree should be modified so as to restrain appellant from continuing in such employment during said period, while said company shall be engaged in said prohibited business. Should the Rentz company engage in some other than the prohibited business, it would be unjust to prohibit appellant from taking employment from it.

The decree is affirmed, except as herein indicated, and in that respect it is reversed, with directions to the Superior Court to modify the same in accordance with the views expressed. Each party will pay his costs in this court.