## GEORGE W. LASHUS, RESPONDENT, *v.* THOMAS C. CHAMBERLAIN, APPELLANT.

CONTRACT.—GOOD WILL.—DAMAGES.—Proof of special damage under an allegation of general damages, if not objected to when offered, cannot be ruled from the case is closed, and fur-. nishes no ground for a new trial. Failure to object at the time is deemed a waiver of the objection.

ID.—ID.—SPECIAL DAMAGES.—In a suit to secure damages for breach of a contract not to engage in the hotel business, evidence of loss of customers without specifying the individuals and general damage in decrease of profits does not show special, but general damages.

ID.—ID.—EXCESSIVE DAMAGES.—When a verdict of $5,000 is returned as damages for a breach of a contract not to engage in the hotel business, where the evidence is general, showing a considerable loss of business and decrease in profits, and it not appearing that the jury were influenced by passion or prejudice, *held* that the verdict was not excessive.

APPEAL from a judgment of the district court of the first district and from an order overruling a motion for a new trial. The opinion states the facts.

*Mr. James N. Kimball* and *Mr. J. G. Sutherland* for the appellant.

*Mr. M. M. Kaighn* and *Mr. E. M. Allison, Jr.,* for the respondent.

ANDERSON, J.

This is an action for damages for breach of contract, whereby the defendant, in making a sale to plaintiff of a hotel in Ogden, known as the "Chamberlain House," agreed with the defendant not to engage in the hotel business again in Ogden as long as the plaintiff continued as proprietor of the Chamberlain House under that name and style; which contract, it is alleged, the defendant violated by opening another hotel, within a short time, in

close proximity to the Chamberlain House, and directing custom and patronage therefrom to the hotel kept by himself. The cause was tried to a jury, and plaintiff obtained a verdict and judgment for $5,000. There was a motion for a new trial, which was overruled, and the appeal is from the judgment and from the order denying a new trial. The only errors complained of in this court in argument are that the verdict is not supported by the evidence, and that the damages are excessive, or, to use the language of appellant's counsel in their printed brief: "The sum of the errors relied on is that the verdict, beyond nominal damages, is excessive." It is contended by counsel for appellant that the complaint does not state a cause of action for more than nominal damages; that no special damages are alleged; that the names of the persons whose patronage was lost to plaintiff by the act of the defendant are not given; and that as the proof cannot go beyond the allegations, nothing beyond nominal damages can be proved under it. The complaint alleges that on the 14th day of August, 1881, plaintiff purchased the hotel from the defendant, known as the "Chamberlain House," and has since then continually kept and operated the same in accordance with his agreement with the defendant, and has performed all the conditions of said agreement on his part to be performed, and that the defendant, as a condition of such purchase, agreed in writing not to again engage in the hotel business in Ogden City, Utah, as long as plaintiff should conduct said hotel under the name and style of the "Chamberlain House." The complaint then states that on or about the 1st day of September, 1882, "said defendant, acting by himself and in connection with others, did erect and furnish in said city of Ogden, and within one square of said original Chamberlain House, a large and commodious hotel building, and has continuously ever since conducted the same as an hotel, and therein lodged, entertained and fed customers and boarders, and advertised the same, and solicited custom and patronage therefor at the trains, depot and other places in and about said city of Ogden, and thereby diverted and drew away from plaintiff guests, customers, and patronage that would

otherwise have come to plaintiff's hotel; that by reason thereof plaintiff has been injured and damaged in the sum of $10,000." On a former appeal of this case this court used the following language in regard to the character of the evidence that might be offered in support of the claim for damages, to-wit.: "Any legitimate evidence tending to prove or disprove such damage may be given. The plaintiff should not be required to name any particular person who may have been induced to withhold his patronage and to give it to the defendant; any diminution of receipts to plaintiff after the opening of the new house, and any diversion of patronage thereto; * * * the extent of business done by each; and any competent fact or circumstance which may afford an inference of damage to plaintiff's business from defendant's breach." 5 Utah, 140; 13 Pac. Rep. 363. The district court instructed the jury in substantial conformity with the above rule. The evidence introduced by plaintiff, without objection by defendant, tended to show that the defendant had kept the Chamberlain House for a number of years before the sale; that, in about a year after the sale of the hotel to plaintiff, defendant begun the erection of a new hotel within less than a square of the Chamberlain House, and on the same street, and that he opened it for business about the last of November, 1882, a period of about fifteen months after plaintiff took possession of the Chamberlain House; that within that time plaintiff had done a thriving business, his net profits amounting to about $10,000, and he had found it necessary to increase the capacity of the house; that immediately after the opening of the new hotel by defendant, plaintiff's customers began to leave him and transfer their patronage to the defendant; that the defendant's hotel was named the "Central House," but he put no name on the building, nor any sign in front thereof, for about one year after he began business in it, and that those engaged in running hacks and carriages for him between the "Central House" and the railroad depot solicited patrons at the depot for the Central House by calling out to travelers and others "New Chamberlain House," "The Chamberlain House," "Chamberlain Hotel," etc., and took the cus-

tomers thus obtained to the Central House; that by reason of this wrongful conduct of the defendant the patronage of the Chamberlain House continued steadily to decrease until its business amounted to little or nothing, while the business of the Central House as steadily increased; that from the time defendant began keeping the Central House, in November, 1882, to April, 1888, when defendant quit keeping his hotel, plaintiff's loss in carrying on the hotel business in the Chamberlain House from loss of patronage amounted to $6,150.

Special, as contradistinguished from general, damage is that which is the natural, but not the necessary, consequence of the act complained of, and generally must be specially alleged in order to entitle a party to prove the same, and in order that the defendant may be apprised of the claim and be prepared to meet the charge with any proper defense he may have. But proof of special damage, when only general damage is averred, if not objected to when offered, cannot be ruled from the jury by an instruction after the evidence of the case is closed, and furnishes no ground for a new trial. Unless the objection is made when the evidence is offered, it is deemed to be waived. *Roberts* v. *Graham*, 6 Wall. 578; *Mosher* v. *Lawrence*, 4 Denio, 421; *Lawrence* v. *Barker*, 5 Wend. 305; *Newbery* v. *Lee*, 3 Hill, 523. In *Roberts* v. *Graham*, above referred to, Graham, who was plaintiff in the court below, sued Roberts on a contract whereby Roberts agreed to transport him and his wife and child as first-cabin passengers from New York to San Francisco, and to furnish them suitable accommodations, etc., on the way, which, it was alleged, he not only failed to do, but, on the contrary, overloaded the steamer which carried them from Panama to San Francisco with a greater number of passengers than she could suitably accommodate, and that by reason thereof "the plaintiff and his wife and child were subjected to great inconvenience and injury." The plaintiff testified that he became ill by reason of the exposure on the steamer in not having sufficient bedclothing; "that bedclothing had been furnished him, but that he was compelled to deprive himself of it in order to supply his child, which child

had not been furnished with berth or bedclothing." After the evidence was closed, the defendant's counsel asked the court to instruct the jury that in assessing the damages, by reason of the sickness of the plaintiff during the voyage they must exclude from consideration sickness arising from the want of sufficient bedclothing on the steamer, because there was no allegation in the complaint on which to base a recovery for such injuries. The court refused to give this instruction, and charged the jury that plaintiff was entitled to recover damages for his sickness if they found it was caused by such exposure and want of sufficient clothing or covering for his berth. On appeal this ruling was affirmed by the supreme court of the United States, that court holding that the sickness of the defendant, by reason of his exposure on the steamer, was not special damage within the rule of pleading on that subject, and that, if it was, the right of the defendant to object to a recovery on that ground was waived by his failure to object to the evidence when offered. The court in its opinion refers to the case of *Ward* v. *Smith*, 11 Price, 19, as a case directly in point, and of "undoubted and conclusive authority." That was a suit upon a lease, and the declaration averred that the defendant refused "on request, to permit the plaintiff to take possession and have the use of the premises, whereby the plaintiff had sustained loss, and had been obliged to hire other premises at great cost and expense for rent and charges." The plaintiff proved on the trial that the premises had been taken for his wife's business, who was a milliner, were advantageously situated for trade, "and that by not being suffered to occupy them he sustained considerable loss by the passing by of a profitable part of the year for that business in the meantime." It was urged by defendant upon a motion for a new trial "that there was no special damage averred in the declaration, for that there were no particular customers named therein as having withdrawn their custom from the plaintiff; and, further, that there were no averment of the business of the wife, or that the plaintiff had sustained any loss in her business." Chief Baron RICHARDS said: "As to the objection of evidence of special damage having been

admitted, there was in fact no special damage as such proved. The object of the witness' testimony was to show that the plaintiff had sustained inconvenience." Baron Graham said that no special damage had been proved, and added: "Loss of customers, and general damage occasioned thereby, however, may have been given in evidence under this declaration; for it charges general loss, without specifying any particular individuals whose custom had been lost, and it was competent for the plaintiff to show certain damages sustained by breach of agreement in this action, without stating his loss more specially in the declaration." See also *Burrell* v. *Salt Co.*, 14 Mich. 34; 1 Suth. Dam. 763, 764; *Heiche* v. *Hamilton*, 4 G. Greene, 317.

We think there was no special damage, as such, proved in the present case, but, even if there was, the defendant should have objected to the evidence when it was offered, and, having failed to do so, the objection was waived. Only general damages are averred in the complaint, and under this allegation it was proper to prove general loss by the diversion of customers and patronage, without alleging in the complaint, or proving at the trial, the names of the particular individuals whose custom had been lost to plaintiff by the wrongful act of the defendant. The amount of damage awarded by the verdict is not so great as to indicate that the jury was actuated by passion or prejudice or other improper motives. The learned judge who presided at both trials of the case in the court below overruled a motion for a new trial, based on the claim that the damage given is unwarranted by the evidence, and excessive. We think there was no error in so doing. The defendant deliberately and flagrantly violated his contract with the plaintiff. He should make just compensation for the injury done. He should not be permitted to escape with the payment of merely nominal damage, because it is impossible to prove with exactness the full extent of the injury, or the names of the individuals whose custom was diverted from the plaintiff's hotel to that of the defendant. The damage, from the very nature of the case, could only be estimated. As was said in *Doyle* v. *Dixon*, 97 Mass. 208, a case similar to this, "the injury to the plaintiff by

diverting his trade was not capable of exact proof or definite computation, but depended very much upon general estimate, which was peculiarly within the province of the jury." So it is in this case, and the defendant had no just cause of complaint in being required to sustain all the risks of loss resulting from the difficulty of ascertaining accurately the result of his wrongful act. The case of *Heiche* v. *Hamilton, supra,* was very similar in its facts to the one before us. It is there said: "In cases of this kind it is difficult to fix upon a rule by which damages can be satisfactorily ascertained. It is not expected that a plaintiff can prove a precise sum abstracted from his profit by violation on the part of the defendant, but the jury should be careful to find sufficient damages to admonish the defendant that honesty is the best policy." See, also, *Allison* v. *Chandler,* 11 Mich. 552. The evidence showed large profits accrued to the plaintiff up to the time defendant opened the Central House, and that after that time there were no profits, but a continual loss for a period of about five years. Only a slight attempt was made to account for plaintiff's loss of business and profits on any other ground than that of the diversion of his customers to the Central House by the defendant. We think the jury was justified from the evidence in finding, as it must have done, that the plaintiff's loss was the direct and necessary result of the wrongful act of the defendant in diverting plaintiff's customers away from the Chamberlain House to the hotel kept by himself. The judgment of the district court is affirmed.

ZANE, C. J., and BLACKBURN, J., concurred.