Argued 24 January; decided 12 March, 1900.

**DOSE *v.* TOOZE.**

[60 Pac. 380.]

General and Special Damages—Pleading.

1. Under an allegation of pecuniary loss a party may recover those damages
that are necessarily and inevitably sustained through the act complained of,
which are designated general damages; while special damages are those which
may naturally flow from the wrongful act or omission, but to be recoverable such
must be specially claimed.

Contracts in Restraint of Trade—Evidence—Damages.

2. In an action for breach of a contract not to re-engage in a business for a
specified time, evidence of the quantity of goods purchased by defendant, and the

sum paid therefor, on re-entering the business, being merely a basis for estimating his profit or loss, is inadmissible, since the profit accruing to or the loss sustained by defendant after re-entering the business is not an element of plaintiff's loss, nor·a measure of his damages.

IDEM.

· 3. In an action for breach of a contract not to re-engage in a business for a stipulated time, an instruction permitting a recovery of the difference between the price paid and the actual value of the property at the time of its purchase is erroneous, as it allows the jury to make a new contract for the parties by ascertaining the reasonable value of the property at the time of the purchase, which was not agreed on.

IDEM.

4. In an action for breach of a contract not to re-engage in a business for a specified time, an instruction that defendant, by loaning money to and performing service for a rival firm, breached his contract, is properly refused, as defendant could so act if he had no interest in the rival business, and such acts were only circumstances from which the jury might determine the relation existing between defendant and such rival business.

From Marion : GEO. H. BURNETT, Judge.

Action by Fred Dose against W. L. Tooze to recover damages for the alleged breach of a contract. The substance of the complaint is that on August 11, 1896, defendant was engaged in business at Woodburn, Oregon, as a produce merchant, dealing in grain, potatoes, and wool, and owned at that city and operated a warehouse in connection therewith, containing as fixtures, a boiler, engine, and other machinery, which property on that day, in consideration of $1,500, he sold to plaintiff, and in the bill of sale evidencing the transfer stipulated not to engage, either directly or indirectly, in said business, in the cities of Woodburn, Hubbard, or Gervais, for the term of five years from said date ; that plaintiff thereupon took possession of said building and machinery, and has been continuously ever since, and is now, doing business in said warehouse as a produce merchant, dealing in grain, potatoes, and wool ; that about September 1, 1896, defendant violated his agreement by engaging in business at Woodburn as a produce merchant, dealing in said commodities, and, having advertised such occupation, he

has since continuously solicited the trade of his former customers in said cities and vicinity, thereby diverting patronage which plaintiff would have received, and destroyed the "good will" of his business; that the value of the building, machinery, etc., did not exceed the sum of $700, and the price paid therefor would have been exorbitant if the purchase had not included such good will; and that by reason of defendant's wrongful acts plaintiff has sustained damage in the sum of $4,900, for which he demands judgment. The answer having denied the material allegations of the complaint, a trial was had, resulting in a judgment for plaintiff in the sum of $1, and he appeals.                                    Affirmed.

For appellant there was a brief and an oral argument by *Messrs. Wm. M. Kaiser, Wm. H. Holmes,* and *J. C. Johnson.*

For respondent there was a brief and an oral argument by *Messrs. John A. Carson* and *Geo. G. Bingham.*

Mr. Justice Moore, after stating the facts, delivered the opinion of the court.

At the trial, plaintiff called nine witnesses, by whom he proved that subsequent to August 11, 1896, defendant purchased from them, in the cities of Woodburn, Hubbard, and Gervais, such commodities as he had agreed not to deal in, but was not permitted to prove by them the quantity so purchased, or the sum paid therefor; nor allowed to call fifty other witnesses, whose attendance he procured, to testify in relation to the quantity or value of such commodities sold by them to the defendant after that date within said territory, which action of the court is assigned as error. This testimony was rejected on the ground that it would only tend to prove special damages,

and, plaintiff not having alleged that he sustained any loss of this character, such testimony was inadmissible under the *ad damnum* clause of the complaint.

1.   General damages are such as a party necessarily sustains from the wrong of which he complains, and such as the law presumes would inevitably result from the act or omission of the adverse party causing the injury, and are recoverable under an averment in the complaint of plaintiff's pecuniary loss, without stating their particular nature :   5 Enc. Pl. & Prac. 717 ;   *Wisner* v. *Barber,* 10 Or. 342 ;   *Sunnyside Land Co.* v. *Willamette Bridge Ry. Co.* 20 Or. 544 (26 Pac. 835) ;   *Barruso* v. *Madan,* 2 Johns. 145 ;   *Dumont* v. *Smith,* 4 Denio, 319 ;   *Laraway* v. *Perkins,* 10 N. Y. 371 ;   *Prentiss* v. *Barnes,* 6 Allen, 410.   Special damages, however, do not necessarily result from the · wrongful act or omission of the adverse party, but are such as may flow from them as a natural and proximate consequence, caused by his negligence or design ;   and, as the law does not presume that such an effect will inevitably follow, it is incumbent upon the plaintiff to allege specifically in the complaint the facts constituting his special damages, in order that the adverse party may have notice thereof, and be prepared for trial :   5 Enc. Pl. & Prac. 719 ;   3 Sedgwick, Dam. (8 ed.) § 1261 ;   1 Sutherland, Dam. 763 ;   *Salmon* v. *Olds,* 9 Or. 488 ;   *O'Leary* v. *Rowan,* 31 Mo. 117 ;   *Laing* v. *Colder,* 8 Pa. St. 479 (49 Am. Dec. 533).

2.   Plaintiff's counsel, in support of their contention that the testimony so excluded was admissible under the allegation in the complaint of general damages, cite and rely upon the case of *Lashus* v. *Chamberlain,* 6 Utah, 385 (24 Pac. 188), which was an action to recover damages for the breach of a contract not to engage in the hotel business.   In that case the evidence showed that plaintiff purchased a hotel from the defendant, who agreed not to

engage in the hotel business in the City of Ogden, Utah, as long as the plaintiff continued as proprietor of and operated said hotel under the name by which it was then known; that within fifteen months after such purchase plaintiff made a net profit of $10,000 in operating the hotel, and found it necessary to increase the capacity of the house; that defendant erected a new hotel in close proximity to the one so sold by him, and, having opened it for the public, plaintiff's customers began to leave him, and to transfer their patronage to the defendant; and that plaintiff's loss, while defendant operated his hotel, amounted to $6,150. Judgment having been rendered against the defendant for the sum of $5,000, he appealed, contending that, inasmuch as the names of the persons whose patronage was so lost by his act were not given in the complaint, nominal damages only could be recovered under it. Mr. Justice ANDERSON, in deciding the case, says: "We think there was no special damage, as such, proved in the present case, but, even if there was, the defendant should have objected to the evidence when it was offered, and, having failed to do so, the objection was waived." In that case no attempt was made, so far as can be discovered, to prove how long any guest remained at defendant's hotel, or what sum, if any, he paid for the care and attention which he received, so that no greater latitude in the admission of testimony seems to have been given therein than was extended to plaintiff in the case at bar.

Another case relied upon by plaintiff's counsel is that of *Peltz* v. *Eichele*, 62 Mo. 171, in which it appears that Eichele, being the owner of a match factory at Saint Louis, Missouri, sold the same to plaintiffs, authorizing them to use the name of A. Eichele & Company, employed by him in conducting the business, and covenanted that he would

37 OR.—2.

not enter into the manufacture of matches in said city for the term of five years, nor lend his name or skill to any other person so engaged, to the detriment of the business thus transferred.   This covenant he violated by erecting a new factory in said city, and engaging in the manufacture and sale of matches under the name of P. Eichele & Company.   Plaintiffs, having sold their factory and stock to him, commenced an action to recover damages for a breach of the covenant, alleging that defendant influenced the patrons of A. Eichele & Company to become patrons and customers of P. Eichele & Company, and thereby injured and destroyed the good will of the business so sold by him.   The testimony introduced at the trial as tending to prove the damages sustained from the injury complained of related chiefly to the profits made by the defendant, his solicitation of orders for matches from his former customers, and the decline in plaintiff's business.   Judgment having been rendered against the defendant for the sum of $10,000, he appealed, assigning as error the action of the trial court in giving and refusing to give certain instructions.   No exception appears to have been reserved to the introduction of testimony relating to the profits so made by defendant, nor do the instructions given or refused relate in any manner to that subject.

Mr. Justice Hough, speaking for the court, announces. the following rule relating to the extent of the injury sustained :   "What the plaintiffs have lost by the defendant's breach of covenant, and not what the defendant has gained thereby, is the legal measure of damages in this case.   If the plaintiffs had manufactured matches to the utmost capacity of their factory, and sold all they made at unreduced prices, notwithstanding the defendant may have, in violation of his covenant, engaged in the same business in Saint Louis, and realized large profits, the

plaintiffs could only have recovered nominal damages; for, in that case, they would have lost nothing.'' The learned justice, in further commenting upon the method of computing the extent of plaintiff's injury, observes: ''In ascertaining the amount of this damage, the profits made by the defendant constitute an element; but only such profits made by the defendant as the plaintiffs have lost by reason of the wrongful act of the defendant complained of in the petition. In ascertaining the profits lost to the plaintiffs, the profits made by the defendant may properly be given in evidence in connection with the diversion of customers from plaintiffs to defendant, and the amount of their purchases, the product of the plaintiff's factory, and the amount of their sales, and the reduction in the price of the articles sold, if any, in consequence of the unlawful competition of defendant.'' No objection having been made to the introduction of testimony concerning the profits made by defendant, nor any instruction requested upon the subject, what was said in relation to such profits constituting an element of damage was not necessary to a decision of the case, and was mere *obiter*. If the profits made by a party who had violated his contract respecting the good will of a business which he had sold constituted an element of damage, it would necessarily seem to follow that, if he conducted a competing business in such a manner as to keep up the running expenses only, and no profit accrued, he would not be liable for a breach of his covenant, regardless of how much injury he could thus inflict upon his credulous victim. The bare statement of the consequences which would result from the converse of such a proposition establishes its absurdity, and shows that, upon principle, the statement thus made, in a matter to which the court's attention was not particularly attracted, cannot be the law. In actions of this character the plaintiff seeks indemnity for the in-

jury he has sustained, and he is entitled to be compensated therefor, notwithstanding the defendant may also have sustained loss by the very competition which he has inaugurated : *Gregory* v. *Spieker*, 110 Cal. 150 (52 Am. St. Rep. 70, 42 Pac. 576). The quantity of the various commodities purchased by defendant, and the prices paid therefor, might have formed a basis for estimating the profits accruing or the losses sustained by violating his agreement ; but, as such profits or losses do not constitute an element of plaintiff's loss, nor measure the extent of his damages, no error was committed in rejecting testimony on that subject.

3. It is stated in the bill of exceptions that testimony was introduced tending to show that the actual value of the warehouse, boiler, engine, machinery, etc., was less than the consideration named in the contract respecting the transfer of the same, and it is contended by plaintiff's counsel that the court erred in not instructing the jury, at their request, in effect, that, if they found from the evidence that defendant had violated his agreement, plaintiff was entitled to recover the difference between the price so paid and the actual reasonable value of said property at the time of the purchase, and also, in addition thereto, such other damages as the jury might be satisfied that he had sustained. In *Howard* v. *Taylor*, 90 Ala. 241 (8 South. 36), it was held that a charge which instructed the jury that, on proof of defendant's breach of an agreement not to engage in the same business elsewhere in the same town, the plaintiff was entitled to recover as damages the difference between the aggregate price paid and the value of the property received, other than the good will, in effect made the value of the good will the measure of damages, and was erroneous. See, also, *Taylor* v. *Howard*, 110 Ala. 468 (18 South. 311). If the court had given the instruction so requested, it would have permitted the jury to make

a new contract for the parties by ascertaining the reasonable value of the property at the time of the purchase, when no agreement had been reached in that respect; and, having reached a conclusion thereon, it would have permitted the jury to treat the difference between such value and the consideration paid as liquidated damages, in the absence of any stipulation to that effect: Sedgwick, Dam. (8 ed.) § 405; *Pengra* v. *Wheeler*, 24 Or. 532 (34 Pac. 354, 21 L. R. A. 726). The question of damages never having been the subject of calculation or adjustment between the parties, no error was committed in refusing to give such instruction.

4. It also appears from the bill of exceptions that defendant had loaned money to, and at different times performed service for, the Pennebaker Produce Company, plaintiff's business rival at Woodburn. The court refused to instruct the jury, as requested by plaintiff's counsel, that such loan and service constituted a breach of his agreement, but charged, in effect, that the defendant had a right to loan money to a business rival, and act as its servant, if he had no interest in and derived no profit from such business; but that the loan and service were circumstances from which the jury might determine the relation existing between the defendant and such business rival. In *Harkinson's Appeal*, 78 Pa. St. 196 (21 Am. Rep. 9), suit was brought to enjoin a mother from permitting or aiding her son to carry on the business of a bakery and confectionery in a ward in the city of Philadelphia. The evidence showed that the mother, having sold her bakery, covenanted not to engage in the same business, directly or indirectly, within the limits of the said ward, at any time within ten years from the date of said sale; but, by her advice and counsel, she would endeavor to encourage and promote the business interest of her vendee. Within that time, in pursuance

of a plan adopted with reference to her other children, she purchased a lot, built and fitted up a house thereon suitable for a bakery and confectionery, and gave the possession thereof to her son, with the understanding that, after he should be thoroughly established in business, he should pay her interest on the sum advanced, and in case of her death the property was to be his, but, if its value was more than he was entitled to, he was to make payment to his brothers and sisters of the excess. He thereupon took out a license as a retail dealer, and continued the business up to the hearing of the cause, at which the court, having found that the business was carried on in good faith by him, and not by his mother, and that no actual damage to plaintiff had been shown, denied the injunction and dismissed the bill.   See, also, *Nelson* v. *Johnson,* 38 Minn. 255 (36 N. W. 868).   In the case at bar the jury were at liberty, under the instruction given, to find that the defendant had a design to be interested in the business of the Pennebaker Produce Company, so as to bring his knowledge, skill and experience in competition with plaintiff in violation of his agreement ; and, the jury having been properly charged in this respect, no error was committed in refusing to give the instruction so requested.

Plaintiff's counsel reserved exceptions to the court's refusal to give other instructions as requested, but, as they are embodied in the general charge, or considered inapplicable, it follows that the judgment is affirmed.

AFFIRMED.