GEORGE P. SCOTTON, GEORGE C. SCOTTON, and LYMAN J. SCOTTON, trading as George P. Scotton and Sons, and also trading as Smyrna Nash Motors Company, *vs.* GEORGE D. WRIGHT and GEORGE HARVEY WRIGHT, trading as George D. Wright and Son.

1. EVIDENCE—GOOD WILL—PURCHASER OF BUSINESS AND GOOD WILL ENTITLED TO DAMAGES FOR IMPAIRMENT OF GOOD WILL ON BREACH, BUT CANNOT SHOW BY OPINION EVIDENCE AMOUNT OF SUCH DAMAGES.

In a suit for breach of contract for the sale of a going business, by reason of defendant's violation of his covenant not to engage again in such business, plaintiff is entitled to damages for the permanent impairment of the good will of the business purchased, but impairment of good will cannot be shown as an independent fact by opinion testimony.

2. EVIDENCE—OPINION EVIDENCE NOT ADMISSIBLE TO PROVE DIMINUTION OF BUSINESS BECAUSE OF SELLER'S COMPETITION IN BREACH OF CONTRACT.

In an action for breach of a contract for the sale of a business and its good will by reason of defendant's engaging in competition with plaintiff, opinion testimony is not admissible to prove diminution in the value of plaintiff's property or business.

3. GOOD WILL—CONTRACT CONVEYING "GOOD WILL" CONSTRUED, AND "IMPAIRMENT OF GOOD WILL" DEFINED.

Where a contract for the sale of a going business conveys also the good will of such business, the seller transfers all the advantages which the business possesses because of his efforts, popularity, and skill in conducting of the business, good will being that property incident to the business sold and the favor which the vendor of a business has won from the public and the probability that old customers will continue their patronage, and such good will is impaired if the new and competing business derogates from the good will sold and the seller in violation of his agreement injures or impairs the advantages due to the good disposition of the public towards the old place of business; in other words, the impairment of good will means the impairment of the value

of the business and the place of business which the buyer purchased from the seller.

**4.  GOOD WILL—DAMAGES FOR IMPAIRMENT OF GOOD WILL ALLOWABLE, THOUGH DIFFICULT OF ASCERTAINMENT.**

In an action by the purchaser of a business and its good will, for damages by reason of the seller's engaging in a competing business in violation of his contract, while the amount of damages for impairment of good will is difficult to prove with certainty, such uncertainty will not work a denial of justice to the party wronged, but the damages will be ascertained from all the facts and circumstances disclosed by the evidence as best they may.

**5.  GOOD WILL—MEASURE OF DAMAGES FOR BREACH OF CONTRACT NOT TO COMPETE WITH PURCHASER OF BUSINESS STATED.**

The measure of damages for breach of a contract not to compete with one purchasing a business and good will is the injury which the buyer has sustained, and it may include loss of profits and diminution in value of the property purchased, which are the result naturally and proximately caused by the breach.

**6.  GOOD WILL—PROOF OF VALUE OF PROPERTY WITH GOOD WILL IMPAIRE. BY SELLER'S COMPETITION ADMISSIBLE.**

In an action for breach of a contract for the sale of a business and its good will by engaging in competing business, proof is competent to show the difference between the present worth of the property with the good will impaired and the amount of the purchase price.

**7.  GOOD WILL—MEASURE OF DAMAGES FOR SELLER'S CONTRACT NOT TO ENGAGE IN COMPETING BUSINESS STATED.**

In an action for breach of a contract for the sale of a business with its good will, containing a covenant by the seller not to engage in a competing business, the measure of plaintiff's damages is the value of the business lost to plaintiff by reason of defendant's competition, and not the profits which the defendant has realized in violation of his agreement.

**8.  DAMAGES—MERELY SPECULATIVE, NOT RECOVERABLE.**

Merely speculative damages are not recoverable, but to warrant recovery damages must be proved with reasonable certainty and not left to conjecture.

**9.  GOOD WILL—IMPAIRED VALUE AND LOSS OF VOLUME OF BUSINESS TO BE CONSIDERED IN MEASURING DAMAGES FOR BREACH OF SELLER'S CONTRACT NOT TO ENGAGE IN COMPETING BUSINESS.**

In measuring the damages for the loss sustained by the purchaser of a business and its good will, the jury may consider the difference between what the purchaser's trade or business has been worth and what it would have been worth if the seller had not engaged in competition, and for that purpose may consider the volume of business done by the purchaser before and after the seller's re-entry into such business competition.

10.  GOOD WILL—PROFITS MADE BY SELLER IN VIOLATION OF HIS AGREEMENT
NOT TO ENGAGE IN COMPETING BUSINESS MAY BE CONSIDERED IN ESTI-
MATING PURCHASER'S DAMAGES.

In an action for breach of seller's contract not to engage in competing
business, the profits made by the defendant though not the measure for plain-
tiffs' damages, may be considered by the jury with the other facts and cir-
cumstances in determining seller's losses.

11.  GOOD WILL—IN ACTION FOR BREACH OF CONTRACT NOT TO RE-ENGAGE
IN COMPETITIVE AUTOMOBILE SALES BUSINESS, PURCHASER'S FAILURE
TO OBTAIN AUTOMOBILE AGENCY NOT TO BE CONSIDERED UNLESS PRE-
VENTED BY SELLER'S BREACH.

In an action for damages for breach of contract by the seller of an automo-
bile garage, sales agency, and good will, the loss of business caused the pur-
chaser by the seller's procuring the sales agency for the sale of a popular car
may be considered in ascertaining the purchaser's damages, but no allowance
can be made for the purchaser's failure to obtain the agency for that particular
car, unless caused by seller's competition.

12.  GOOD WILL—DAMAGES FOR BREACH OF AGREEMENT NOT TO RE-ENTER
COMPETING BUSINESS MUST BE PROVED WITH REASONABLE CERTAINTY.

While damages for loss of business and impairment of good will by reason
of seller's engaging in competing business is not required to be proved with
mathematical exactness or specific certainty, such damages must be proved
by facts and circumstances with sufficient certainty to enable the jury to as-
certain the damages sustained, and if such loss of business and profits was
caused by something other than the seller's breach of contract, no award
should be made for such loss.

13.  GOOD WILL—LOSS DUE TO SELLER'S RE-ENGAGING IN COMPETING BUSI-
NESS TRUE MEASURE OF DAMAGES.

In an action for breach of seller's contract not to re-engage in competing
business, the true measure of damages is the loss sustained by the purchaser,
proximately caused by the seller's competition.

(*March 7*, 1923.)

PENNEWILL, C. J., RICE and RODNEY, J. J., sitting.

*James I. Boyce* and *William M. Hope* for the plaintiff.

*Daniel O. Hastings* and *William H. Boyce* for the defendant.

Superior Court for Kent County, February Term, 1923.

Issue from the Court of Chancery of the State of Delaware,
in and for Kent County. No. 43, February Term, 1923.

This was an issue sent to the Superior Court by the Chan-
cellor, 13 *Del. Ch.* 214, 117 *Atl.* 131, for the determination by a
jury of the amount due the plaintiffs under an admitted breach
of contract not to engage in competing business.

The plaintiffs produced in evidence an agreement dated January 19, 1920, setting forth the sale by defendants to the plaintiffs of a garage property and business, together with the good will of said business, located in Smyrna, Kent county, for the consideration of $10,000, said agreement reserving to defendants the right to sell Buick cars, parts for Buick cars, and to repair Buick cars.

The evidence of the plaintiffs tended to show that about August 1, 1920, defendants started another garage business in the town of Smyrna, presumably as a Buick agency; that this garage and the one operated by plaintiffs were situated on the main highway leading through Smyrna, over which all north and south bound traffic must pass, with one other garage on said highway; that the defendants, about March 1, 1921, acquired the Ford agency for the town of Smyrna, contrary to the terms of the agreement, conducting said agency until October 1, 1922; that the plaintiffs endeavored to secure said agency, but were unable to do so; that plaintiffs had the agencies for Nash and Oakland cars, with which cars the Ford is a strong competitor; that defendants sold gasoline, oils, tires, and other accessories, and engaged in a general garage business, competing with the plaintiffs; that, by reason of such competition the business, and the good will of plaintiffs' business stand was impaired. Books of account were produced showing that during the first six months plaintiffs were in business, with no competition from the defendants, they did an average business of $6,000 per month, while, during the first six months after the opening of the new garage by defendants, plaintiffs did an average monthly business of between $2,500 and $3,000, which rate continued during the competition; that on a business of $6,000 per month the net profits were approximately $600 a month, while, when plaintiff's business decreased to $2,500 or $3,000 a month, they made no profits.

Defendants continued in business, in competition with plaintiffs, until October 1, 1922, when an injunction was issued by the Chancellor.

H., an automobile expert, was asked on direct examination:

"What, in your opinion, would be the sale value of a Ford agency in the town of Smyrna?" (Objected to, and objection sustained.)

W., an automobile expert, was asked in direct examination:

"You have testified that you are familiar with the Scotton place of business, and also with the Wright place of business, and in a general way with the competition which existed between those two places of business from August, 1920, to about the 1st of October, 1922. If the business stand of George P. Scotton & Sons with the good will of the Wrights and a covenant on the part of the Wrights not to engage in the sale of automobiles, supplies, accessories, or repairs, or to operate a general garage, except for Buick cars, parts of Buick cars, and to repair Buick cars, was worth $10,000 on the 19th day of January, 1920, what, in your opinion, was it worth on the 18th day of January, 1923, other things being equal?" (Objected to by counsel for defendants.)

PENNEWILL, C. J.: In addition to the loss of profits or business that the plaintiffs would have received if the defendants had not broken their contract, the plaintiffs claim damages for the permanent impairment of the good will that went with the business they purchased. This claim is based on the reduced value of the business caused by the breach of the restrictive agreement.

We think the authorities support the plaintiffs' claim, but the question is, how shall such damage be proved?

[1] Some of the authorities that seem to be opposed to the plaintiffs' contention are based on the impossibility or great difficulty of making actual and positive proof of good will as a separate and independent element of damage. We are of the opinion that the impairment of good will cannot be shown as an independent fact by opinion testimony.

If it was impaired at any time between the breach of the agreement and the issuance of the injunction, and the jury are convinced of that fact from all the facts and circumstances of the case, as shown by the evidence, it should be considered by them in determining the damages that plaintiffs have sustained on account of defendants' violation of their covenant. But we do not think the loss or impairment of good will can be shown as a separate and independent element of damage, because any testimony offered for such purpose would be opinion testimony, so speculative and uncertain as to be of no probative value.

[2] For the same reason we hold, that the opinion of a witness is not admissible to prove diminution in the value of plaintiffs'

property or business. Such diminution must be proved by the facts and circumstances properly admissible in evidence, and, if so proved, should be considered by the jury in ascertaining the damages the plaintiffs have sustained by the defendants' default.

In the reduction of plaintiffs' claim for damages, the defendants introduced considerable testimony to show that when plaintiffs took over the business, they increased the price of labor; that new cars plaintiffs had for sale were used by them for pleasure trips; and that plaintiffs were not attentive to their business, and did not at times keep business hours.

### PLAINTIFFS' PRAYERS.

(1)    Although the damages may be difficult of exact computation, the Scottons are not precluded from recovering because of that fact.    12 *R. C. L.* 996, 997.

(2)    The damages in this case are twofold: first, the permanent impairment of the good will of the place of business purchased by the Scottons, and second, the losses in business which the Scottons have sustained by reason of the breach of contract.

(3)    The jury must first determine whether the market value of the place of business which the Scottons purchased from the Wrights has depreciated in value by the breach of covenant.    If so, this is one item of damage to be allowed to the Scottons.

(4)    A large portion of the marketable or assessable value of a business often consists in the good will maintained by it and if the jury believe that the good will has been permanently impaired, you must estimate the impairment.

(5)    Any uncertainty is not to work a denial of justice to the parties who may have been wronged; the damages must be ascertained from all the circumstances as best they may.

(6)    The amount of damages is not limited by the profits which the Wrights have realized in violation of their agreement.

(7)    The profits made by the Wrights should be considered under all the facts and circumstances in determining the Scottons' losses.

(8)    If the plaintiffs' profits have been reduced a certain amount by the defendants' competition, they should receive that

sum which is lost; and, if in addition to that the good will of the business is worth a certain amount less than it would have been but for the defendants' illegal act, the plaintiffs should recover this sum also. *Salinger v. Salinger*, 69 *N. H.* 589, 48 *Atl.* 558.

(9)   If the plaintiffs have overestimated the amount of business transacted by the defendants or the profits realized from the business by the defendants, the burden is upon the defendants to make the evidence more exact or to correct it if it was untrue.

(10)   In estimating the profits of the defendants, the jury must not include any salaries or living expenses and rents received by them as such salaries and living expenses resulting to them from the breach of their contract, and no man can take advantage of his own wrong.

(11)   In this case the wrong done by the Wrights is such as they have chosen to make it; hence, theirs is the loss which may arise from uncertainty pertaining to the nature of it, and the difficulty of accurately estimating the results of their own wrongful act.

(12)   It is not to be expected that the plaintiffs can prove a precise sum abstracted from their profits by a violation on the part of the defendants but the jury should be careful to find sufficent damages to admonish the defendants that ''honesty is the best policy.''

(13)   The court takes judicial notice of the fact that at least three factors enter into the purchase of a motor vehicle: original cost, cost of upkeep, and depreciation, and the court takes judicial notice of the fact that the sale of Ford motor vehicles competes with the sale of other motor vehicles.

(14)   The defendants had no right to engage in the Ford business and have  broken their contract by so doing and if the jury believe from all the facts and circumstances that the Scottons would have secured the Ford agency they must assess its value to them and consider such value as an item of loss to the Scottons.

(15)   The verdict must be for the plaintiffs, and should be in a sufficient sum to cover the losses sustained by the plaintiffs by reason of the wrongful competition of the defendants.

### Defendants' Prayers.

(1)  The measure of damages in a case like this, generally expressed, is the value of the business lost to the buyer, by reason of violation of the agreement by the seller and not the profits made by the seller. *Gregory v. Spieker*, 110 *Cal.* 150, 42 *Pac.* 576, 52 *Am. St. Rep.* 70.

(2)  The measure of damages is the difference between what the trade of the Scottons has been worth since they have been in business and what it would have been worth, as shown by evidence, if the Wrights had not engaged in business. *Moorehead v. Hyde*, 38 *Iowa* 382; *Moorman v. Parkerson*, 131 *La.* 204, 59 *South.* 122, *Ann. Cas.* 1914A, 1150.

(3)  The measure of damages is not the difference between the profits made by the Scottons before the Wrights re-entered business and the profits made by the Scottons after the Wrights had re-entered business; but only so much of this difference, if there be any shown, as was lost by the Scottons because of the fact that the Wrights did re-enter business; and certain proof of how much was thus lost by the Scottons devolves upon them. *Peltz, et al., v. Eichele*, 62 *Mo.* 171; *Howard v. Taylor*, 90 *Ala.* 244, 8 *South.* 36; *Dose v. Tooze*, 37 *Or.* 13, 18, 60 *Pac.* 380.

(4)  The Scottons must show, if they can, that they have been deprived of profits by reason of the competition of the Wrights, and the burden of proof is upon the Scottons to show that they have been deprived of profits by reason of competition by the Wrights; and no profits made by the Wrights can be recovered by the Scottons as damages except such only as the Scottons show by proof that they have lost by reason of competition by the Wrights. *Shaw v. Jones*, 133 *Ga.* 446, 66 *S. E.* 240.

(5)  In a case like this, damages claimed should be shown by clear and satisfactory evidence, to have been actually sustained. Damages for breach of the contract must be shown with certainty and not left to speculation or conjecture. Only such profits of the Wrights which would certainly have been realized by the Scottons if the Wrights had not re-entered in business, are recoverable.

(6)   What the Scottons have lost by the violation of the agreement by the Wrights, and not what the Wrights have gained thereby, is the legal measure of damages in this case. *Peltz, et al., v. Eichele*, 62 *Mo*. 171; *Howard v. Taylor*, 90 *Ala*. 244, 8 *South*. 36; *Dose v. Tooze*, 37 *Or*. 13, 18, 60 *Pac*. 380.

(7)   In ascertaining the amount of damages shown in this case, only such profits made by the Wrights as the Scottons have lost by reason of the fact that the Wrights re-entered business are recoverable.   Cases last above cited.

(8)   We concede that the Scottons are entitled to have a verdict for nominal damages, but, in the absence of proof of the extent of the injury caused by the breach of the agreement on the part of the Wrights, the Scottons are not entitled to recover compensatory damages, if the jury shall find that the Scottons have failed to make proofs of actual losses, for they are not entitled to recover remote, consequential or speculative damages. *Howard v. Taylor*, 90 *Ala*. 241, 245, 8 *South*. 36.

(9)   What the Scottons have lost by reason of the fact that the Wrights re-entered business, if anything, and not what the Wrights have gained by re-entering business, is the legal measure of damages in this case. *Dose v. Tooze*, 37 *Or*. 13, 18, 60 *Pac*. 380; *Gregory v. Spieker*, 110 *Cal*. 150, 42 *Pac*. 576, 52 *Am. St. Rep*. 70.

(10)   Damages which are merely speculative and contingent are not recoverable. *Griffin v. Colver*, 16 *N. Y*. 489, 491, 69 *Am. Dec*. 718; *Brigham v. Carlisle*, 78 *Ala*. 243, 249, 56 *Am. Rep*. 28; *Hithcock v. Anthony*, 83 *Fed*. 779, 28 *C. C. A*. 80.

(11)   If the jury shall find from the evidence and the law as charged by the court that the Scottons are entitled to recover anything beyond nominal damages, then they are entitled to recover only as their damages the actual amount of loss and injury sustained by them, which was the natural, direct, and immediate result of the Wrights re-entering business.

(12)   The jury, in reaching their conclusion, should estimate as nearly as they can, in the light of the evidence, the difference between what the trade of the Scottons was actually worth from the time they entered into business and until the Wrights ceased

to do business, and what the business of the Scottons would have been worth to them if the Wrights had not re-entered business. *Moorehead v. Hyde*, 38 *Iowa* 383, 384.

PENNEWILL, C. J., charging the jury:

The issue that you have been impanelled to try was sent to this court by the Chancellor, and under it you are required to ascertain the amount of damages sustained by the plaintiffs on account of the defendants' violation of an agreement made at the time of the sale of their garage property and business in the town of Smyrna to the plaintiffs.

Because of their violation of said agreement, the defendants were permanently and perpetually restrained by the Chancellor from operating a garage or service station, and from engaging in the sale of automobiles, or the supplies, or repairs or accessories for the same anywhere in or adjacent to the town of Smyrna, excepting, however, and reserving to the defendants the right to sell Buick cars, parts for Buick cars and to repair Buick cars.

In accordance with the further order of the Chancellor, the parties at this trial, plaintiffs and defendants, admit that on or about the 19th day of January, 1920, the said George D. Wright and George Harvey Wright then and there trading as George D. Wright & Son, in the town of Smyrna, Kent county, and state of Delaware, granted, bargained, and sold unto the said George P. Scotton all the garage property, garage business and good will, tools, mechanical equipment and fixtures situated at the place of business of the said George D. Wright and George Harvey Wright in the town of Smyrna. And the plaintiffs admit that the defendants, from the 2d day of February, 1920, to the 18th day of January, 1923, had the right, under said agreement, to sell Buick cars, parts of Buick cars and to repair Buick cars. And the defendants admit, that from the 2d day of February, 1920, to the said 18th day of January, 1923, they did not have the right to operate a garage or service station, or engage in the sale of automobiles, or the supplies or repairs or accessories for the same except by and according to the reservation respecting Buick cars, anywhere in

or adjacent to the town of Smyrna.  And the defendants admit that they have broken their covenant or agreement, and have operated a garage and service station and have engaged in the sale of automobiles and the supplies and repairs and accessories for the same contrary to the provisions of the said agreement. And the question which shall be submitted to the jury shall be: how much have the plaintiffs been damaged by the said breach of covenant?

Such is the order of the Chancellor, and under it the duty of the jury is restricted to a single point, viz.: the ascertainment of the amount of damages which the testimony shows the plaintiffs sustained, and are entitled under the law to recover from the defendants for the breach of their said covenant or agreement.

[3]   You have heard a great deal during the trial of this issue about "good will," and "the impairment of good will," and no doubt you have wondered what those terms mean.   It is not easy to clearly state their legal meaning, but it may be of some assistance to tell you, that "good will" has been defined as—

"Property incident to the business sold, and the favor which the vendor of a business has won from the public, and the probability that old customers will continue their patronage."

It may also be said to be, all the advantages that the business possesses because of the efforts, popularity and skill of the seller, employed in the making and conduct of the business.

Good will is impaired if the new and competing business derogates from the good will sold, that is, if the seller has done something in violation of his agreement, which injures the good disposition of the public towards the old place of business, or impairs any of the advantages which the buyer acquired by his purchase.  It is not meant by this, however, that one who sells his business to another, with the good will, insures to the purchaser the continuance of the business in the same volume and with the same profits as before the sale, because the business may be diminished or reduced for reasons other than the competing business, such as inattention, or lack of business ability, or favor with the public.

But it does mean that one who sells his business to another, with the good will, and agrees not to engage in a similar business, shall not violate such agreement, and if he does he is liable to the purchaser for any and all injury to him caused by the competitive business.

The impairment of good will means the impairment of the value of the business and the place of business, which the buyer purchased from the seller.

Perhaps the most important question in this case is, how shall the extent of the injury, or the amount of the damages of the plaintiffs, be ascertained?

[4]  It is conceded by the authorities, that while the amount of damages in a case of this kind is difficult to prove with certainty, the uncertainty is not to work a denial of justice to a party who has been wronged, and that the damages must be ascertained from all the facts and circumstances disclosed by the evidence as best they may.  *Sutherland on Damages, vol. 3, § 658 (3d Ed.)* 1913.

[5-7]  No better or clearer statement of the law on the subject can be found than that contained in 12 *R. C. L.* 996, 997, which is as follows:

"While the measure of damages in an action for the breach of an agreement by the seller not to re-enter business in competition with the buyer is usually difficult of exact computation, he who is damaged will not be precluded from recovering because of that fact. But the plaintiff will be called upon, in order to recover substantial damages, to furnish sufficient data to enable the jury, with a reasonable degree of certainty and exactness, to estimate the actual damages, and if he fails to do this he can recover only a nominal sum. Generally speaking, the measure of damages for breach of a contract not to compete with one purchasing a business and good will is the injury which the buyer has sustained, which may include loss of profits and diminution in value of the property purchased. And following the ordinary rule for computing damages they must be such as result naturally and proximately from the breach. * * * Proof is competent to show how much less than the purchase price, the property is worth with the good will impaired, and while the measure of damages is not the profits which the defendant has realized in violation of his agreement, but the value of the business lost to the plaintiff thereby, it has been held that the profit made by the defendant may be considered in evidence, if it is shown to correspond in whole or in part with the loss of the plaintiff."

In the case of *Peltz v. Eichele*, 62 *Mo.* 171, the court said:

"If plaintiffs lost less than the defendant made, they cannot recover the whole of defendant's profits; if plaintiffs lost more than the defendant made, they would not be limited to defendant's profits. What the plaintiffs have

lost by the defendant's breach of covenant, and not what the defendant has gained thereby, is the legal measure of damages in this case."

"In cases of this character it is not required that the proof of the extent of damages be definite and specific.   There must be proof of injury, but the jury may find the amount of damages by drawing reasonable inferences from the facts, circumstances, and data furnished by the evidence."   *Bowling v. Walls*, 72 *W. Va.* 638, 78 *S. E.* 791.

"Losses in such cases are not ordinarily susceptible of any mathematically exact measurement.   The most that can be done is to adduce the pertinent facts and submit them to the jury to estimate and determine the sum which will afford the injured party reasonable compensation."   *Galucha v. Naso*, 147 *Iowa* 309, 126 *N. W.* 146.

[8]   But damages that are merely speculative are not recoverable.   They must be proved with reasonable certainty and not left to conjecture.   The jury, in reaching their conclusion, should estimate as nearly as they can, in the light of the evidence, the difference between what the trade of the plaintiffs was actually worth from the time they entered into business until the defendants ceased to do business, and what the business of the plaintiffs would have been worth if the defendants had not re-entered business.   What the plaintiffs have lost by reason of the fact that the defendants re-entered business, and not what the defendants have gained by re-entering business, is to be considered by the jury in determining the damages the plaintiffs are entitled to recover. The plaintiffs must show, if they can, that they have been deprived of profits by reason of the competition of the defendants, but no profits made by the defendants can be recovered as damages except such as the plaintiffs show they have lost by reason of such competition.

[9]   The measure of damages is the loss sustained by the plaintiffs, by reason of the violation by the defendants of their agreement, and not the profits made by the seller; and in determining  the amount of such loss the jury should consider the difference between what the trade or business of the plaintiffs has been worth since they have been in business, and what it would have been worth, as shown by the evidence, if the defendants had not engaged in business.   And for the same purpose the jury may consider the volume of business done by the plaintiffs before the

defendants re-entered business, and the volume of business done by them after the defendants re-entered business.

The damages claimed in this case are for the impairment of the good will of the place of business purchased by the plaintiffs from the defendants, and for losses in business which the plaintiffs have sustained by reason of the defendants' breach of contract.

It is your duty to determine from the evidence to what extent the value of the business, and the place of business, as a business stand, including good will, which the plaintiffs purchased from the defendants, have depreciated because of their breach of contract, and the amount of damages that will reasonably compensate the plaintiffs therefor.

[10]  While the profits made by the defendants may not be taken as the measure of damages, they may be considered by you in connection with all the other facts and circumstances in determining the plaintiffs' losses. The real question is, in this connection, not what profits the defendants made, but what part of such profits would have been made by the plaintiffs if there had been no competition by the defendants.

If you find from the testimony that the plaintiffs' profits have been reduced by the defendants' competition, and that the plaintiffs' business or place of business as a business stand, including good will, is worth less than it would have been but for the defendants' breach of contract, the plaintiffs would be entitled to recover damages sufficient to compensate them for such losses.

There is testimony in the case respecting the agency for the sale of Ford cars, and the competition of Ford cars, with Nash and Oakland cars for the sale of which the plaintiffs had the agency.

[11]  If you believe from the evidence that the Ford car was a competitor with the cars the plaintiffs were selling, any loss of business to the plaintiffs caused by such competition, and shown by the testimony, should be considered by you in ascertaining the damages sustained by the plaintiffs. But no loss in the business and profits of the plaintiffs because of their failure to obtain the Ford agency should be considered unless you are satisfied from the testimony that the agency for said car secured by the defendants

prevented the plaintiffs from securing it, and also, that if they had secured the agency they would have derived profit therefrom.

[12]   In conclusion, gentlemen, we will summarize and simplify as much as we can the law as stated. In ascertaining the amount of damages sustained by the plaintiffs on account of defendants' violation of their agreement, you may consider the amount of business done and profits made by the plaintiffs, before and after the defendants re-entered business; and you may also consider the profits made by the defendants after they re-entered business, not as showing the profits the plaintiffs lost, but as an element to be taken in connection with the other facts and circumstances of the case in determining the amount of the plaintiffs' loss from defendants' competition. And while, because of the difficulty of proving damages in a case of this kind, proof by the plaintiffs is not required to be made with mathematical exactness or specific certainty, it is incumbent on them to prove the facts and circumstances upon which they rely with sufficient certainty to enable the jury to ascertain the damages they have sustained. Such damages must not be the result of speculation or conjecture; and they must be the natural and proximate result of the competitive business, that is, the defendants' breach of contract. If the plaintiffs' loss of business and profits was caused to any extent by something other than the act of the defendants, that fact or circumstance should be considered by the jury in determining the damages sustained.

[13]   After all, the rule of law that you will perhaps best comprehend, and the one that will probably be most helpful to you is briefly this: the measure of damages is the loss the plaintiffs sustained on account of the competition of the defendants. Such are the damages the plaintiffs are entitled to recover and are to be ascertained by you from all the evidence in the case.

There is a fact to which we think your attention should again be called, which is not disputed, but embraced in the order of the Chancellor, viz: the erection by the defendants of their new garage was not in itself a violation of their agreement made with the plaintiffs. They had a right, under their contract with the

plaintiffs, to engage in the business of selling Buick cars, parts for Buick cars, and to repair Buick cars, and they had, therefore, the right to erect and operate a garage for the conduct of such business. The breach of their contract consisted in engaging in other automobile or garage business in competition with the business they had sold to the plaintiffs.

We may say to you, that because of the violation by the defendants of their agreement the plaintiffs are entitled to recover, and your verdict must, therefore, be in their favor, but what the amount of the damages shall be is entirely for your determination after carefully considering all the facts and circumstances as shown by the evidence, and the law applicable thereto as we have stated it.

Verdict for plaintiffs for $3,000.