Argued October 22; reversed December 16, 1930

# GODLOVE *v.* RUSSELL ET AL.

(293 P. 936)

*H. E. Slattery* of Eugene for appellant.
*Arthur Clarke* of Corvallis for respondents.

KELLY, J. Whether a general demurrer to the amended complaint in this action should have been sustained is the question to be decided herein. It appears from the amended complaint that the respondents constituted a partnership under the assumed name of Russell Poultry Yards, and that they and appellant executed the following written instrument:

"This agreement made and entered into this 16th day of March, 1929, by and between Russell Poultry Yards of Corvallis, Oregon, hereinafter designated as the Buyer, and Mr. C. W. Godlove, Eugene, Oregon, hereinafter designated as the Seller.

"Witnesseth: That the Buyer agrees to purchase and the Seller agrees to sell hatching eggs from his flock of 60 Mommoth Bronze turkey hens, as and if delivered in accordance with the following requirements.

"1. The Seller agrees not to sell or dispose of any hatching eggs to any other person or person, and that he will maintain said flock of turkeys in substantially its present size as above stated, and properly care for said turkeys in a good and husbandlike manner to produce hatching eggs, proper feeding methods being used at all times and ample range and green feed provided. Males must be approved by the Buyer and one male provided for each twelve to fifteen hens. The Seller reserves the right to save approximately 400 eggs for his own use.

"2. It is further understood and agreed that all eggs, in order to come within the term of, and be

'hatching eggs' as used in this agreement, shall not be undersize, thin-shelled or misshapen; that such eggs shall be kept at a temperature of not less than 50 degrees or more than 70 degrees.

"3. The Buyer agrees to pay 25c per egg until May 16, after May 15th to June 15th, 25c per egg, the eggs to be 80 per cent fertile, otherwise 15c per egg; after June 15th, should we be able to use them, 15c per egg.

"4. The Buyer shall be the judge as to what constitutes hatching eggs in para. 2.

"In Witness Whereof, the parties hereto have subscribed their hands and seals, the day and year first above written.

"Russell Poultry Yards, Buyer,
"By J. W. Russell,
"C. W. Godlove, Seller."

On behalf of respondent, it is urged that this writing is a mere continuing offer; that it is made contingent upon certain conditions precedent; that nowhere in the writing do defendants agree to purchase any definite quantity of eggs, nor is any method provided of determining the quantity which they should purchase; that it lacks mutuality, and that it is indefinite and uncertain as to subject-matter, quantity, time and price.

■ We do not so construe the contract. A construction which makes a contract valid and its performance possible will be preferred to one which makes it void or its performance impossible or meaningless: 2 Williston on Contracts, 1202, § 620, and cases cited in note 3.

■■ As we construe it, the appellant, referred to in the contract, as the seller, agrees to sell the respondents all of the hatching eggs produced from his flock of sixty turkeys from the date of the contract to June 15, except that he reserves the right to withhold de-

livery of approximately 400 eggs for his own use. The conclusion that all of the hatching eggs from this flock of turkeys to the date mentioned were contracted for is derived from the terms of the writing to the effect that respondent would purchase and appellant would sell hatching eggs from appellant's flock of turkeys and that appellant was not to sell nor dispose of any hatching eggs to any other person or persons. The quality of the eggs is defined as not undersized, thin-shelled, or misshapen, and none of them were to have been subjected to a temperature of less than 50 degrees nor more than 70 degrees. Respondents were accorded the right to pass upon the question of whether appellant's eggs were of the quality thus defined. This right on respondents' part of approval or rejection, because of quality, could not be exercised capriciously, but only in good faith, and hence did not render the subject-matter indefinite as to amount or quality, nor constitute a condition precedent of such a nature as to invalidate the contract: 1 Williston on Sales (2d Ed.) 353, § 191 and cases cited in note 78.

As to price, the contract fixes the price at 25 cents per egg until May 16; after May 15 to June 15, 25 cents per egg if 80 per cent fertile, otherwise, 15 cents per egg. No recovery is sought because of the provision in the contract concerning eggs produced after June 15, and hence, we are not concerned with the concluding clause of paragraph 3 which seems to be in the nature of an option or continuing offer as to such eggs.

■ As to time, the parties are shown by the amended complaint to have given a practical construction to the contract, it being alleged that delivery of eggs was made from March 16, 1929, up to and including May 15, 1929, thereby rendering the time of performance

sufficiently certain, although where the dates appear in the body of the writing the year is not given.

The amended complaint alleges that on May 16, 1929, defendants notified plaintiff that they canceled the said contract from the said date and that they would accept no more turkey eggs under the terms of the contract, or otherwise, or at all. This sufficiently alleges a breach of the contract in question by defendants.

■ The amended complaint also alleges readiness, ability and willingness on the part of plaintiff to fully perform said contract, and full performance by plaintiff up to the time defendants repudiated it and refused to permit plaintiff to perform.

There is also an allegation in the amended complaint that between May 16, 1929, and June 15, 1929, the turkeys described in the contract produced 1,612 eggs; that plaintiff was able to sell 100 of them at 15 cents each; that the cost of the sale was $3; that the remainder of said eggs had no market value at all; and also an allegation in effect that by reason of the premises plaintiff has suffered damages to the amount of $391.

It is urged that the failure of plaintiff to allege in his amended complaint that the turkeys in question produced hatching eggs is an added reason for holding such amended complaint to be vulnerable to demurrer.

For two reasons, we are unable to agree with respondents on this point.

■■ First. We think that the measure of damages, because of an anticipatory or prospective breach of such a contract by one party thereto, is the profit which would have accrued to the other party in the performance thereof. Ordinarily, that would be repre-

sented by the contract price less the expense which would have been incurred if the contract had been performed. For that reason, after the repudiation of the contract, the plaintiff was under no obligation to show that the turkeys in question laid any eggs of any kind whether "hatching" or otherwise: 2 Williston on Sales (2d Ed.) 1452, § 586.

■ Second. Where a complaint sets up a contract and alleges a breach thereof and also alleges that because of the facts averred in the premises plaintiff has suffered damages in a definite sum, such a complaint is not vulnerable to a general demurrer: *Sunnyside Land Co. v. Willamette Bridge Railway Co.,* 20 Or. 544 (26 P. 835); *Dose v. Tooze,* 37 Or. 13 (60 P. 380); *Bussard v. Hibler,* 42 Or. 500, 503 (71 P. 642); *Pacific Bridge Co. v. Oregon Hassam Co.,* 67 Or. 576, 579 (134 P. 1184); In *Smith v. Pallay,* 130 Or. 282, 289 (279 P. 279), the rule is succinctly stated by Mr. Justice RAND:

"General damages are those which necessarily result from the act or omission complained of and may be shown under the *ad damnum* or general allegation of damages, at the end of the declaration; for the defendant must be presumed to be aware of the necessary consequences of his conduct, and, therefore, cannot be taken by surprise in the proof of them. Some damages are always presumed to follow from the violation of any right or duty implied by law. Therefore, the law will in such cases award nominal damages, if none greater are proved."

The demurrer was interposed in good faith and hence the cause will be remanded for such further proceedings as are not inconsistent herewith. Appellant to recover costs and disbursements on appeal.

BEAN, RAND and ROSSMAN, JJ., concur.